**No. 25-10656**

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

**ANNETTE KINGSOLVER**,

Plaintiff-Appellant,

v.

**U.S. ATTORNEY GENERAL, et al,**

Defendant-Appellee.

On Appeal from the United States District Court
for the Southern District of Georgia

# BRIEF OF APPELLEE THE UNITED STATES ATTORNEY GENERAL

MARGARET E. HEAP
UNITED STATES ATTORNEY

Channell V. Singh
Assistant United States Attorney
United States Attorney's Office
Post Office Box 8970
Savannah, GA 31401
(912) 652-4422

# CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Bondi, Pamela

Bureau of Alcohol, Tobacco, and Firearms

Cheesbro, Hon. Benjamin W.

Garland, Merrick

Heap, Margaret E.

Kingsolver, Annette

Leithart, Otto Woelke

Lyons, Tara M.

Moses, Mary Helen

Ruberti, Andrew M.

Singh, Channell Veena

Steinberg, Jill E.

Stuchell, James C.

U.S. Attorney General

U.S. Department of Justice

Wood, Hon. Lisa Godbey

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument is unnecessary in this case. The facts and legal arguments are adequately presented in the briefs and record, and the decisional process would not be significantly aided by oral argument. *See* Fed. R. App. P. 34(a)(2)(C).

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT ............................ C-1

STATEMENT REGARDING ORAL ARGUMENT ..................................i

TABLE OF CONTENTS ..........................................................ii

TABLE OF CITATIONS ..........................................................vi

STATEMENT OF JURISDICTION............................................ 1

STATEMENT OF THE ISSUE................................................. 1

STATEMENT OF THE CASE ................................................. 2

I. Facts. ........................................................................ 2

A. Kingsolver had cardiac arrythmia and depression before working for the ATF where she received annual EEO training........................................................ 2

B. In March 2007, Kingsolver was promoted to Management Analyst (GS-9). In April 2007, Kingsolver told her supervisor she was stressed............................ 3

C. In May 2007, Kingsolver asked for indefinite leave and a transfer to unavailable roles..................................... 4

D. On June 14, 2007, Kingsolver submitted physicians' letters with no recommendations to the ATF................ 5

E. On June 19, 2007, Kingsolver was moved into an office with a window and offered a flexible schedule and liberal

leave ........ 6

F. On July 19, 2007, Kingsolver's supervisors gave her DOJ's reasonable accommodation form. In August 2007, Kingsolver generally asked for assistance but did not submit the form ........ 7

G. In October 2007, Kingsolver submitted the form, asking for transfer to an unavailable role. Later, she requested transfer to an available role ........ 8

H. Kingsolver smiled "ear to ear," and hugged and thanked her supervisor when they met to formalize the transfer ........ 9

I. Kingsolver first complained to the EEO on November 16, 2007, and filed her formal complaint on January 2, 2008, when her cardiac arrythmia and depression normalized ........ 9

II. Procedural History ........ 11

A. Kingsolver's complaint only claimed that the ATF had failed to reasonably accommodate her depression and cardiac arrythmia when she was transferred ........ 11

B. Kingsolver's case proceeded to discovery ........ 12

1. Kingsolver's interrogatory responses listed seven more accommodation requests ........ 12

2. Kingsolver's testimony during the administrative proceedings ........ 13

3. Kingsolver did not disclose expert witnesses ..... 14

C. The Attorney General moved for summary judgment 14

D. Kingsolver did not meaningfully dispute the Attorney General's statement of material facts ......................... 15

E. Kingsolver opposed, arguing that her October 2007 transfer request was coerced, and that the time requirement for the earlier discrimination claims was equitably tolled........................................................ 17

F. The Attorney General replied that Kingsolver's expert evidence should be excluded and that she failed to show due diligence to equitably toll the time requirement for her pre-October 2007 claims ...................................... 18

G. The district court heard the parties' arguments ......... 19

H. The district court granted summary judgment, finding that Kingsolver's pre-October 2007 claims were time barred and unreasonable and that her October 2007 transfer was not coerced ............................................ 23

III. Standards of Review ......................................................... 26

SUMMARY OF ARGUMENT ............................................................ 26

ARGUMENT ...................................................................................... 27

The district court's entry of summary judgment on Kingsolver's discrimination claims in favor of the Attorney General should be affirmed because: (1) some of Kingsolver's claims are not properly before the Court; and (2) Kingsolver

fails to establish a prima facie case of discrimination under the Rehabilitation Act ........................................................ 27

A. The Court should not consider the pre-October 2007 claims ............................................................ 27

1. Pre-October 2007 Issue Abandoned .................... 28

2. Pre-October 2007 Claims Not in Complaint ....... 29

B. Kingsolver fails to meet the Rehabilitation Act's liability standards ........................................................ 30

1. Summary-Judgment Standard ........................... 30

2. Rehabilitation-Act Standards ............................. 32

3. Pre-October 2007 Claims Unexhausted ............. 33

i. No Equitable Extension ............................. 34

ii. No Equitable Tolling ................................. 36

4. No Discrimination ............................................. 38

i. No Pre-October 2007 Discrimination ........ 39

ii. No October 2007 Discrimination ............... 45

5. Not Qualified or Disabled .................................. 50

CONCLUSION ................................................................................ 53

CERTIFICATE OF COMPLIANCE AND SERVICE ............................ 54

# TABLE OF CITATIONS

**Cases** **Page(s)**

*Abram v. Fulton Cnty. Gov't*, 598 F. App'x 672 (11th Cir. 2015) ........... 34

*Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324 (11th Cir. 2004) ........................................................................................ 26, 35

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)........................ 31, 32

*Arce v. Garcia*, 434 F.3d 1254 (11th Cir. 2006) ................................ 37, 38

*Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325 (11th Cir. 2016) ........................................................................................................ 47

*Boyle v. City of Pell City*, 866 F.3d 1280 (11th Cir. 2017) ................ 33, 39

*Brown v. Snow*, 440 F.3d 1259 (11th Cir. 2006).................... 29, 30, 32, 40

*Cash v. Smith*, 231 F.3d 1301 (11th Cir. 2000) ...................................... 32

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)......................................... 31

*Coon v. Ga. Pac. Corp.*, 829 F.2d 1563 (11th Cir. 1987).......................... 30

*D'Angelo v. Conagra Foods*, 422 F.3d 1220 (11th Cir. 2005) ................. 45

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)..... 19

*Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441 (11th Cir. 1998).. 43, 45, 47, 48

*Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222 (11th Cir. 1997) .............. 44

*Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361 (11th Cir. 1999)........................................................................................... 39

*Hargray v. City of Hallendale*, 57 F.3d 1560 (11th Cir. 1995) ......... 45, 47

*Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220 (11th Cir. 1999) 51

*Holbrook v. City of Alpharetta*, 112 F.3d 1522 (11th Cir. 1997)............ 50

*Holloman v. Mail-Well Corp.*, 443 F.3d 832 (11th Cir. 2006) ................26

*Holly v. Clairson Indus. L.L.C.*, 492 F.3d 1247 (11th Cir. 2007) ...........50

*In re Pan Am. World Airways, Inc.*, 905 F.2d 1457 (11th Cir. 1990) .....46

*J.S., III ex rel. J.S. Jr. v. Houston Cnty. Bd. Of Educ.*, 877 F.3d 979 (11th Cir. 2017) ..........32

*Jackson v. Astrue*, 506 F.3d 1349 (11th Cir. 2007)................................37

*Lucas v. W.W. Grainger*, Inc., 257 F.3d 1249 (11th Cir. 2021).........39, 50

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ..........31

*Myers v. Hose*, 50 F.3d 278 (4th Cir.1995)............................................44

*Nogara v. Lynn Law Off., P.C.*, No. 23-14135, 2024 U.S. App. LEXIS 25585 (11th Cir. Oct. 10, 2024)..........52

*Oaxaca v. Roscoe*, 641 F.2d 386 (5th Cir. 1981)....................................35

*Owens v. Georgia, Governor's Off. of Student Achievement*, 52 F.4th 1327 (11th Cir. 2022) ..........44

*Porterfield v. SSA*, No. 20-10538, 2021 U.S. App. LEXIS 26129 (11th Cir. Aug. 30, 2021) ..........41, 42, 50

*Pritchard v. S. Co. Servs.*, 92 F.3d 1130 (11th Cir. 1996) ......................51

*Rink v. Cheminova, Inc.*, 400 F.3d 1286 (11th Cir. 2005) ......................32

*Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678 (11th Cir. 2014).26, 28

*Shiver v. Chertoff*, 549 F.3d 1342 (11th Cir. 2008)................................34

*Singh v. U.S. Att'y Gen.*, 561 F.3d 1275 (11th Cir. 2009).......................28

*Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278 (11th Cir. 1997)..........43

*Sutton v. Lader*, 185 F.3d 1203 (11th Cir. 1999) .................................... 32

*Transamerica Leasing, Inc. v. Institute of London Underwriters*, 267 F.3d 1303 (11th Cir. 2001) .................................... 46

*United States v. Penn*, 63 F.4th 1305 (11th Cir. 2023) .................................... 36

*Willis v. Conopco, Inc.*, 108 F.3d 282 (11th Cir. 1997) .................................... 41, 44

*Wilson v. Sec'y of Veterans Affairs VA*, No. 20-10799, 2022 U.S. App. LEXIS 15303 (11th Cir. June 3, 2022) .................................... 36

*Wood v. Green*, 323 F.3d 1309 (11th Cir. 2003) .................................... 41

*Worthy v. City of Phenix City,* 930 F.3d 1206 (11th Cir. 2009) .................................... 26

**Statutes**

28 U.S.C. § 1291 .................................... 1

28 U.S.C. § 1331 .................................... 1

29 U.S.C. § 701 *et seq*. .................................... 1

29 U.S.C. § 794(a) .................................... 33

42 U.S.C. § 1983 .................................... 47

42 U.S.C. § 2000e-16(b) .................................... 33

42 U.S.C. § 2000e-16(c) .................................... 1

42 U.S.C. § 12102 (2007) .................................... 51

42 U.S.C. § 12111(8) (2007) .................................... 50

**Rules**

11th Cir. R. 25-3(a) .................................... 54

11th Cir. R. 28-5 .................................... 1

Fed. R. App. P. 4(a) .................................... 1

Fed. R. App. P. 25(c)(1)(C) ........ 54

Fed. R. App. P. 25(c)(2) ........ 54

Fed. R. App. P. 32(a)(5) ........ 54

Fed. R. App. P. 32(a)(6) ........ 54

Fed. R. App. P. 32(a)(7)(B) ........ 54

Fed. R. App. P. 32(a)(7)(B)(iii) ........ 54

Fed. R. App. P. 34(a)(2)(C) ........ i

Fed. R. Civ. P. 8(a) ........ 29

Fed. R. Civ. P. 26(a)(2) ........ 14, 19

Fed. R. Civ. P. 56 ........ 31

Fed. R. Civ. P. 56(a) ........ 31

Fed. R. Evid. 702 ........ 19

S.D. Ga L.R. 56.1 ........ 15, 16

**Regulations**

29 C.F.R. § 1614 *et seq.* ........ 33

29 C.F.R. § 1614.105(a) ........ 34

29 C.F.R. § 1614.105(a)(1) ........ 33, 34

29 C.F.R. § 1614.105(a)(2) ........ 35

29 C.F.R. § 1630.2(i)(1997) ........ 51

29 C.F.R. § 1630.2(o)(3) ........ 39

## Other Authorities

ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat. 3553 (2008) .......... 51

## STATEMENT OF JURISDICTION

On December 30, 2024, the United States District Court for the Southern District of Georgia entered summary judgment for the Attorney General[1] and a final judgment against Kingsolver in an action she brought under the Rehabilitation Act. (Doc. 34.)[2] The district court had jurisdiction under 28 U.S.C. § 1331 and 29 U.S.C. § 701 *et seq*. On February 28, 2025, Kingsolver timely filed a notice of appeal. (Doc. 35.) *See* Fed. R. App. P. 4(a). This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the district court's entry of summary judgment on Kingsolver's discrimination claims in favor of the Attorney General

---

[1] Kingsolver named the Attorney General, the Department of Justice ("DOJ"), and the Bureau of Alcohol, Tobacco, and Firearms ("ATF") as defendants in her complaint alleging employment discrimination. (Doc. 1 at 1.) However, the only proper defendant in a discrimination suit against a federal agency is the head of the agency. 42 U.S.C. § 2000e-16(c). Therefore, because the Attorney General is the head of the ATF, the Attorney General should be the only named defendant.

[2] As required by this Court's Rule 28-5, citations to the record refer to the document and page number "that appears in the header generated by the district court's electronic filing system."

should be affirmed because: (1) some of Kingsolver's claims are not properly before the Court; and (2) Kingsolver fails to establish a prima facie case of discrimination under the Rehabilitation Act.

## STATEMENT OF THE CASE

### I. Facts.

#### A. Kingsolver had cardiac arrythmia and depression before working for the ATF where she received annual EEO training.

In 1999, Kingsolver started working with the ATF, a DOJ component, at the Federal Law Enforcement Training Center in Glynn County, Georgia. (Docs. 1 at 1; 21-2 at 1; 21-17 at 2; 26-1 at 1-2.) Since before her employment, she suffered from depression and cardiac arrythmia. (Doc. 21-17; 26-1 at 1-2; Doc. 1 at 2.) From June 2005 to March 2007, Kingsolver worked on the Budget team as a Management Assistant GS-7[3] employee. (Docs. 21-2at 1; 21-5 at 4, 13:1-4.) During this time, Kingsolver completed annual Equal Employment Opportunity ("EEO") training, which instructed her, "If you feel that you have been a victim of discrimination or retaliation, you may wish to contact an EEO

---

[3] "'GS' refers to the General Schedule pay scale for federal government employees." (Doc. 33 at 2 n.1.)

[ ] officer or counselor for your agency within 45 days . . ." (Docs. 21-1 at 1-3, 6, 43, 84; 21-17 at 2; 26-1 at 1-2; 29-1 at 2; 26 at 5 n.5.)

### B. In March 2007, Kingsolver was promoted to Management Analyst (GS-9). In April 2007, Kingsolver told her supervisor she was stressed.

Toward the end of March 2007, Kingsolver was promoted to a Management Analyst GS-9 position, which was to formally become effective in May 2007. (Docs. 21-17 at 2; 26-1 at 2.) Kingsolver understood that working in the ATF's financial computer system, known as Financial Resource Desktop or FReD, was an essential function of her role. (Docs. 21-17 at 2; 26-1 at 2; 23-1 at 84; 23-7 at 2; 30 at 16 n.15.) During the week of April 16, 2007, a colleague observed Kingsolver crying in her office. (Docs. 21-17 at 3; 26-1 at 2; 21-8 at 1.) Kingsolver told the colleague that working in FReD was causing her stress. (Docs. 21-17 at 3; 26-1 at 2; 21-5 at 5, 20:12-13.)

On April 20, 2007, Kingsolver's first-line supervisor, Abra Lattany-Reed, learned about Kingsolver's crying. (Docs. 21-17; 26-1 at 2; 21-8 at 1.) On or about April 23, 2007,[4] Lattany-Reed called Kingsolver into her

---

[4] Kingsolver's statement of the case inaccurately identifies this date as Friday, April 27, 2007. (Kingsolver Br. 9-10.)

office. (Docs. 21-7 at 6; 21-8 at 1; 21-17 at 4.) Kingsolver and Lattany-Reed had a short meeting—"maybe five, six, seven minutes." (Doc. 21-7 at 12.) Kingsolver told Lattany-Reed that she had been crying because of "stress from working in FReD." (Docs. 21-7 at 7; 21-17 at 4; 26-1 at 2; 29-1 at 3.) Lattany-Reed discussed the availability of resources for help through ATF's Employee Assistance Program ("EAP") and Business Health Services. (Docs. 21-8 at 1; 21-7 at 11-12.) She also provided Kingsolver with a memo about these services. (Docs. 21-17 at 4; 26-1 at 2-3; 21-8 at 1; 21-7 at 6.) Kingsolver did not make any request for accommodation. (Docs. 21-17 at 4; 21-7 at 7; 23-4 at 46.) Kingsolver then took a two-week vacation followed by a week-long FReD training before returning to work. (Docs. 21-17 at 5; 26-1 at 3; 27-5 at 7, 25:18-25.)

### C. In May 2007, Kingsolver asked for indefinite leave and a transfer to unavailable roles.

On May 21 and May 23, 2007, Kingsolver met with Lattany-Reed and her second-line supervisor, Thomas Brandon. (Docs. 21-17 at 2, 5; 26-1 at 2-4; 21-5 at 7, 26:4-5, 27:15-19; 26-1 at 3.) Kingsolver told them that she suffered from cardiac arrythmia and depression, and that working in FReD was worsening these conditions. (Docs. 21-17 at 5; 26-1 at 3-4; 21-5 at 7, 28:9-23, 8, 29:1-3.) Kingsolver asked whether she could

take an indefinite period of leave without pay or whether any positions were available for a transfer. (Docs. 21-17 at 5; 26-1 at 3; 21-7 at 9-10.) The supervisors did not approve the indefinite leave and there were no positions, at her same grade level, available for transfer. (Docs. 21-17 at 5; 26-1 at 3; 21-7 at 9-10; 21-5 at 8, 29:12-25.)

### D. On June 14, 2007, Kingsolver submitted physicians' letters with no recommendations to the ATF.

On June 14, 2007, accompanied with a cover memo, Kingsolver submitted letters from two physicians—a letter dated May 27, 2007, from Dr. Mitchell Jones, a cardiologist, and a letter dated May 29, 2007, from Dr. Antonio Moran, an oncologist. (Docs. 21-17 at 6-7; 26-1 at 4-5; 21-7 at 21; 21-10 at 1; 21-11 at 1.) Dr. Jones's letter described Kingsolver's cardiac arrythmia, but it did not make any specific requests or recommendations to the ATF. (Docs. 21-17 at 6; 26-1 at 4; 21-9 at 1.) Dr. Moran's letter noted Kingsolver's history of chronic depression, and that Kingsolver believed her stress was because of her job duties and her windowless office. (Docs. 21-17 at 6; 26-1 at 4; 21-10 at 1.) Like Dr. Jones,

Dr. Moran did not make any requests or recommendations to the ATF.[5] (Docs. 21-17 at 7; 26-1 at 4; 21-10 at 1.) And, the cover memo made no accommodation request. (Docs. 21-17 at 7; 26-1 at 4-5; 21-11 at 1.)

### E. On June 19, 2007, Kingsolver was moved into an office with a window and offered a flexible schedule and liberal leave.

On June 19, 2007, Kingsolver met with Lattany-Reed and Brandon. (Docs. 21-17 at 8; 26-1 at 5; 29-1 at 6; 21-5 at 9, 36:22-24.) She told them about the stress she was experiencing from working in FReD. (Docs. 21-17 at 8; 26-1 at 5; 29-1 at 6; 21-5 at 10, 37:19-22.) She made no accommodation request. (Docs. 21-17 at 8; 26-1 at 5; 29-1 at 6; 21-5 at 10, 37:19-22.) Still, Lattany-Reed immediately moved Kingsolver into an office with a window and offered her liberal use of her annual and sick leave as well as flexibility in her work schedule. (Docs. 21-17 at 8; 26-1

[5] In her statement of the case, Kingsolver states that these letters "recommended a review of her job duties." (Kingsolver Br. 12.) The letters made no such recommendation. Dr. Jones's letter, addressed to "whom it may concern," stated, "I have urged her to minimize her work-related stress, as this has seemed to be a precipitating factor for this cardiac arrythmia. Please consider this in *her request* for review of her current job description." (Doc. 21-9 at 1) (emphasis added.) The only recommendation in Dr. Moran's letter is that Kingsolver seek "the professional attention [of] a psychiatrist," a referral he pledged to make himself. (Doc. 21-10 at 1.)

at 5; 1 at 3; 13 at 3.)

### F. On July 19, 2007, Kingsolver's supervisors gave her DOJ's reasonable accommodation form. In August 2007, Kingsolver generally asked for assistance but did not submit the form.

On July 19, 2007, Kingsolver met with Brandon and Lattany-Reed and requested a transfer to a new position at a comparable grade level. (Docs. 21-17 at 8; 26-1 at 5; 21-4 at 49.) Kingsolver requested no other accommodation. (Docs. 21-17 at 8; 26-1 at 5; 21-4 at 49-50.) No comparable positions were available. (Docs. 21-17 at 9; 26-1 at 5; 21-5 at 79, 313:1-10.) Nevertheless, Brandon and Lattany-Reed provided Kingsolver with the DOJ-100A form, the DOJ's official accommodation request form. (Docs. 21-17 at 8; 26-1 at 5; 21-4 at 49; 21-12 at 1.) On August 16, 2007, Kingsolver had another meeting with Brandon and Lattany-Reed in which she explained her worsening cardiac arrythmia and depression from working in FReD. (Docs. 21-17 at 9; 26-1 at 5; 21-5 at 13, 50:4-25.) She did not submit the DOJ-100A form she had received. (Docs. 21-17 at 9; 26-1 at 5; 21-7 at 30-31.) She generally asked for assistance with her FReD duties; she did not make any specific accommodation request. (Docs. 21-17 at 9; 26-1 at 5; 29-1 at 7-8.)

### G. In October 2007, Kingsolver submitted the form, asking for transfer to an unavailable role. Later, she requested transfer to an available role.

On October 1, 2007, Kingsolver finally submitted the DOJ-100A form to Lattany-Reed. (Docs. 21-7 at 9; 26-1 at 6; 21-12 at 1.) Kingsolver requested only one accommodation—a transfer to a comparable position. (Docs. 21-17 at 10; 26-1 at 6; 21-12 at 1; 23 at 16; 33 at 4.) Kingsolver met with Lattany-Reed between October 1 and October 10, 2007 to discuss her accommodation request. (Docs. 21-17 at 10; 26-1 at 6; 21-4 at 71.) On October 9, 2007, Lattany-Reed informed Kingsolver that a comparable position was not available. (Doc. 21-17 at 10; 26-1 at 6; 21-4 at 71.) Lattany-Reed said that the only open position available for transfer was a Management Assistant GS-7 position. (Doc. 29-1 at 9; 26-1 at 6; 21-4 at 73.) Kingsolver "did not make an immediate decision." (Doc. 23-7 at 11.) She considered this option overnight and "consulted with her husband." (Docs. 23-7 at 11; 30-2 at 11; 21-17 at 10-11; 26-1 at 6; 21-4 at 78-79.) The next morning, she decided to take the GS-7 position. (Docs. 21-17 at 10; 26-1 at 6; 21-4 at 78-79.) Lattany-Reed assisted Kingsolver to formalize the request in writing. (Docs. 21-17 at 10; 26-1 at 6; 29-1 at 9-10; 21-4 at 79; 21-5 at 30, 119:15.) Kingsolver

then submitted an amended DOJ-100A form, adding the alternative request for the transfer to the GS-7 position. (Docs. 21-17 at 10-11; 26-1 at 6; 21-4 at 79; 21-14 at 1.)

### H. Kingsolver smiled "ear to ear," and hugged and thanked her supervisor when they met to formalize the transfer.

Kingsolver met with Brandon and Lattany-Reed to finalize her request. (Docs. 21-17 at 11; 26-1 at 6; 21-4 at 80.) After the meeting, Kingsolver hugged Brandon and thanked him while "smiling from ear to ear." (Docs. 21-17 at 11; 26-1 at 6-7; 29-1 at 10-11; 21-4 at 80; 21-5 at 17, 68:5-15, 32, 127:18-19; 21-7 at 77.) Kingsolver "was happy because of the relief of the stress." (Doc. 21-4 at 80.) The transfer was to be effective on November 25, 2007 "at employee's request." (Docs. 21-17 at 12; 26-1 at 6-7; 21-15 at 1.)

### I. Kingsolver first complained to the EEO on November 16, 2007, and filed her formal complaint on January 2, 2008, when her cardiac arrythmia and depression normalized.

On November 16, 2007,[6] Kingsolver contacted the EEO and

---

[6] Kingsolver asserts that she contacted the EEO on November 11, 2007. (Kingsolver Br. 24, 24 n.4.) But, Kingsolver admitted below that she had first contacted the EEO on November 16, 2007. (Docs. 21-17 at 12; 26-1 at 6-7.) Moreover, November 11, 2007 fell on a Sunday, and the following

complained that the ATF had failed to reasonably accommodate her disabilities.[7] (Docs. 21-17 at 12; 26-1 at 6-7; 21-16 at 1.) She filed her formal complaint with the EEO on January 2, 2008. (Docs. 21-17 at 12; 26-1 at 6-7; 21-16 at 1.) She complained that the ATF had discriminated against her because she had been demoted to the GS-7 position even though she had initially requested a "transfer out of the budget area comparable to the Management Analyst position that I currently hold." (Docs. 21-16 at 2; 21-17 at 12-13; 26-1 at 6-7; 33 at 5.) Her complaint stated that she was offered two unacceptable choices: "take a leave of absence that would use up all of my annual leave or take a demotion." (Doc. 21-16 at 2.) She made no complaints about any event before the

---

Monday was when Veteran's Day was observed. *The White House, President George W. Bush*, PROCLAMATION ARCHIVES, https://georgewbush-whitehouse.archives.gov/news/releases/2007/10/20071031-6.html (last visited Aug. 26, 2025).

[7] In her statement of the case, Kingsolver states that she first contacted the EEO because she believed she had received a lower performance rating in retaliation for requesting a disability accommodation. (Kingsolver Br. 19.) However, Kingsolver neither raises a retaliation claim on appeal nor raised a retaliation claim below—either in her district-court complaint or her formal EEO complaint. (Docs. 1 at 7; 21-16 at 1; Kingsolver Br. 19-46.)

transfer. (Docs. 21-17 at 12-13; 26-1 at 6-7; 21-16 at 2-3.) By early 2008, Kingsolver's depression and cardiac arrythmia returned to "normal" and she was experiencing less stress. (Docs. 21-17 at 12; 26-1 at 6-7; 21-7 at 51.)

## II. Procedural History.

### A. Kingsolver's complaint only claimed that the ATF had failed to reasonably accommodate her depression and cardiac arrythmia when she was transferred.

After a lengthy administrative history, Kingsolver received notice of her right to sue in February 2023. (Doc. 1 at 5-6.) She timely filed her complaint in the district court, raising one disability-discrimination claim under the Rehabilitation Act. (Docs. 1 at 7-8; 33 at 5.) She challenged the transfer she had requested in October 2007 from the GS-9 role to the GS-7 role as a failure to reasonably accommodate her depression and cardiac arrythmia. (Doc. 1 at 7-8.) The complaint alleged that the ATF had previously accommodated her in May or June 2007 by moving her into an office with a window and offering her "liberal use of

her annual and sick leave and flexibility in her work schedule." (Doc. 1 at 3.) The Attorney General[8] admitted this allegation. (Doc. 13 at 3.)

## B. Kingsolver's case proceeded to discovery.

### 1. Kingsolver's interrogatory responses listed seven more accommodation requests.

The case proceeded to discovery. (Doc. 16 at 1.) As part of its interrogatories, the Attorney General asked Kingsolver to identify each request for accommodation that she had made to her supervisors. (Doc. 21-13 at 3.) In response, Kingsolver listed eight events total—the transfer in October 2007, which was alleged as discriminatory in the complaint, and seven events between April and August 2007. (Docs. 1 at 7; 21-13 at 3-5.) The seven events were: (1) her colleague's April 2007 observation of her crying; (2) the April 2007 meeting with Lattany-Reed; (3) the May 2007 meetings with Lattany-Reed and Brandon; (4) her June 14, 2007 submissions of her physicians' letters; (5) her June 19, 2007 meeting with Lattany-Reed and Brandon; (6) her July 19, 2007 meeting with Lattany-Reed and Brandon; and (7) her August 2007 meeting with Lattany-Reed and Brandon. (Doc. 21-13 at 3-5.)

[8] At the time, Merrick Garland was the Attorney General. (Doc. 1 at 1.)

**2. Kingsolver's testimony during the administrative proceedings.**

Kingsolver thrice testified about her accommodation requests during the administrative proceedings—in 2009, 2012, and 2016. (Docs. 23-4 at 2; 23-5 at 2; 23-6 at 2:1.) In 2009, she did not testify that she had made any accommodation requests to her supervisors in April 2007, and when she was asked about the meeting on July 19, 2007, she explicitly denied asking for anything other than a transfer. (Docs. 23-4 at 46, 50-51.) She further testified that she had personally amended and signed the paragraph on the DOJ-100A form asking for the GS-7 transfer in October 2007. (Doc. 23-4 at 79-80.) Lattany-Reed had assisted her, but she had typed the paragraph herself when Lattany-Reed was not with her. (Doc. 23-4 at 80.)

In 2012, Kingsolver, again, did not testify that she had made any accommodation requests to her supervisors in April 2007. (Doc. 23-5 at 12.) In 2016, Kingsolver testified differently about what had happened in April and July 2007. This time, she testified that in April and July 2007, she had asked Lattany-Reed and Brandon "if I could take leave without pay, a lateral transfer, or what else could be done to help me." (Doc. 23-6 at 7, 13.) Her testimony about the October 2007 transfer

request was like her 2009 testimony—that she had personally typed the amended DOJ-100A form out using notes she had written from her discussion with Lattany-Reed on a typewriter in a separate space. (Doc. 23-6 at 18.)

#### 3. Kingsolver did not disclose expert witnesses.

Kingsolver did not make any expert-witness disclosure to the Attorney General as required by Federal Rule of Civil Procedure 26(a)(2). (Docs. 25-5 at 6; 25-1 at 5.)

### C. The Attorney General moved for summary judgment.

At the close of discovery, the Attorney General moved for summary judgment. (Doc. 21 at 6-7.) The Attorney General argued that Kingsolver failed to establish discrimination under the Rehabilitation Act because there was no dispute of material fact that the October 2007 transfer, the only discriminatory act alleged in the complaint, was made at Kingsolver's request to work in a stress-free role. (Doc. 21 at 6-9.) The claims regarding the seven additional alleged discriminatory events between April and August 2007, listed in Kingsolver's interrogatory

responses, were time-barred under the relevant regulation.[9] (Doc. 21 at 1, 9-12.) Additionally, they were not discriminatory because, during these events, Kingsolver either made unreasonable requests for accommodation or no request at all. (Doc. 21 at 12-24.) And, Kingsolver failed to show that she was a qualified individual with a disability because: (1) her cardiac arrythmia and depression were exacerbated by working in FReD, an essential function of her GS-9 role; and (2) there was no evidence that her conditions, which were "intermittent, temporary, or episodic," impacted her major life activities. (Doc. 21 at 24-26.)

### D. Kingsolver did not meaningfully dispute the Attorney General's statement of material facts.

Pursuant to Southern District of Georgia Local Rule 56.1, the Attorney General attached to his summary-judgment motion his statement of material facts. (Doc. 21-17.) The rule states that "there

[9] The Attorney General noted that any claim of discrimination on October 1, 2007 was also technically time-barred. However, because challenging any discrimination on October 10, 2007 would have been timely under the regulation, and that is the date that Kingsolver had submitted her amended DOJ-100A form, the Attorney General did not challenge the timeliness of claims for any of the October events. (Doc. 21 at 11 n.3.)

shall be annexed to the motion a separate, short, and concise statement of the material facts as to which it is contended there exists no genuine dispute to be tried as well as any conclusions of law thereof." The district court issued a notice to Kingsolver, stating that the Attorney General had filed his summary-judgment motion and that she should consult Local Rule 56.1. (Doc. 22 at 1.) The notice further stated that "[i]f your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence." (Doc. 22 at 1.) Kingsolver filed a response to the Attorney General's statement of material facts. (Doc. 26-1.) The Attorney General argued that her response did not meaningfully dispute his statement because it referenced incorrect citations and provided additional irrelevant facts which did not controvert the facts in his statement. (Doc. 29-1 at 3-7, 10-11.)[10]

---

[10] In his statement, the Attorney General initially inaccurately stated that "[o]n October 9, 2007 [Lattany-]Reed informed Kingsolver that the only open position available for transfer was her previous Management Assistant (GS-7) position." (Doc. 29-1 at 8.) Another GS-7 role was available—not Kingsolver's previous role. (Doc. 29-1 at 9.) So, the Attorney General amended this fact to state, "On October 9, 2007, [Lattany-]Reed informed Kingsolver that the only position available for

### E. Kingsolver opposed, arguing that her October 2007 transfer request was coerced, and that the time requirement for the earlier discrimination claims was equitably tolled.

Kingsolver also filed a response to the Attorney General's summary-judgment motion. (Doc. 26.) She argued that she established discrimination under the Rehabilitation Act because her October 2007 transfer was coerced as indicated by her amended DOJ-100A form, which was "dictated or typed by Lattany-Reed." (Doc. 26 at 13-14) (cleaned up). She acknowledged that she had made the transfer request because other preferred roles did not materialize, and that she had "smiled and hugged Brandon as expressions of 'thankfulness that [she] wasn't going to die of a heart attack in budget.'" (Doc. 26 at 10-11.) She argued that her discrimination claims for her earlier requests for accommodation on April 27, May 21, May 23, June 19, July 13, and August 16, 2007 were not time-barred. (Doc. 26 at 14.) She clarified that her colleague's April 2007 observation of her crying was not an accommodation request. (Doc. 26 at 4 n.4.) She stated that she had "resolved to 'hang on' until October 1" to

transfer was a Management Assistant (GS-7) position." (Doc. 29-1 at 8-9.)

make her transfer request because she had believed that other roles would have become available. (Doc. 26 at 5-8.)

Nevertheless, Kingsolver claimed that the relevant regulation's time requirement to raise her earlier discrimination claims was equitably tolled because the ATF had failed to follow its manual on reasonable accommodations during its interactions with her. (Doc. 26 at 16.) She never claimed that she was unaware of the time requirement, and she acknowledged that she had attended training on making workplace discrimination complaints. (Docs. 26 at 14-19, 23 n.12; 21-7 at 84; 21-1 at 6, 43.) She argued that the ATF had "failed to enter into the interactive process and utterly failed to accommodate [her]." (Doc. 26 at 19-24.) Lastly, she argued that she was a qualified individual with a disability because her letters and affidavits from Dr. Moran and Dr. Jones refuted "that her conditions were intermittent, temporary or episodic." (Doc. 26 at 25.)

### F. The Attorney General replied that Kingsolver's expert evidence should be excluded and that she failed to show due diligence to equitably toll the time requirement for her pre-October 2007 claims.

The Attorney General replied. (Doc. 29.) He asked the district court to exclude the opinions of Dr. Moran and Dr. Jones, which

Kingsolver was relying on to show that she was a qualified individual with a disability, because these opinions stemmed from documents merely attached to Kingsolver's own summary-judgment motion[11] without her making the requisite expert disclosures under Federal Rule of Civil Procedure 26(a)(2). (Doc. 29 at 6.) The Attorney General also argued that the opinions were inadmissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and Federal Rule of Evidence 702 because Kingsolver failed to show that Dr. Jones and Dr. Moran were qualified experts who had rendered helpful opinions from reliable methodologies. (Doc. 29 at 7.) As for Kingsolver's no time-bar argument for her pre-October 2007 claims, the Attorney General responded that she did not dispute that she was aware of the time requirement, that it applied to her, or that she failed to meet it. (Doc. 29 at 10-11.) Nor did she show the due diligence required for equitable tolling. (Doc. 29 at 12-13.)

### G. The district court heard the parties' arguments.

[11] Kingsolver also filed a summary-judgment motion, (Doc. 23), which the district court denied in the same order granting the Attorney General's motion. (Doc. 33.) However, Kingsolver only appeals the grant of summary judgment in favor of the Attorney General. She does not appeal the denial of her summary-judgment motion. (Kingsolver Br. 22-23, 38, 44-46.)

The district court held oral argument on the Attorney General's motion.[12] (Docs. 32; 33 at 1.) The court first heard from the Attorney General's counsel. (Doc. 40 at 3.) Counsel argued that the court should grant the Attorney General summary judgment because if the court considered Kingsolver "to have made eight discrete requests for accommodation, seven of those were not timely raised to the EEOC," and the eighth one was granted by the ATF. (Doc. 40 at 3.) Alternatively, counsel argued that each of the seven discrete events "didn't qualify as reasonable accommodation requests." (Doc. 40 at 5.)

The court asked the Attorney General's counsel whether there was a factual dispute about coercion for the October 2007 transfer. (Doc. 40 at 5.) Counsel answered that there were not sufficient facts in the record to support coercion. (Doc. 40 at 7.) Kingsolver was pleased with the transfer and gave her second-line supervisor, Brandon, a hug and smiled "ear to ear." (Doc. 40 at 6.) Counsel argued that Kingsolver's testimony that she was coerced, standing alone, was not "sufficient to create a

[12] The district court held oral argument on both parties' summary-judgment motions. (Doc. 33 at 1.) However, Kingsolver's motion is not relevant to this appeal. (Kingsolver Br. 22-23, 38, 44-46.)

dispute of material fact about that particular request and whether that was granted." (Doc. 40 at 7.) Counsel noted that Kingsolver would have had a strong claim for discrimination had the ATF denied her request for transfer to the GS-7 role. (Doc. 40 at 7.) The court asked counsel whether it was undisputed that there were other open positions for transfer. (Doc. 40 at 9.) Counsel answered that there was no evidence in the record supporting that, and that it was Kingsolver's burden to identify a comparable position. (Doc. 40 at 9.) Counsel also addressed Kingsolver's argument regarding the ATF's failure to follow its reasonable-accommodation manual, arguing "we want the ATF to follow its policies and procedures but that doesn't constitute a violation of the Rehabilitation Act." (Doc. 40 at 10.)

Next, the court heard from Kingsolver's counsel. (Doc. 40 at 10.) Counsel argued that the October 2007 transfer was not an accommodation because there was no final disposition indicated on the Form 100(b) disposition form. (Doc. 40 at 11.) The form did not indicate whether Kingsolver's transfer request on the DOJ-100A form was accepted or denied. (Doc. 40 at 11.) "All it said was she didn't timely file this [100A] form, and she received it on July 18th but didn't do anything

with it until October 1st." (Doc. 40 at 11.) Counsel argued that the transfer was a personnel action instead of a disability accommodation. (Doc. 40 at 12-14.) The court asked Kingsolver's counsel to identify Kingsolver's evidence of coercion. (Doc. 40 at 16.) Counsel answered that "perhaps 'coercion' isn't the right word," but that she was transferred to a lower GS-7 role even though she had preferred either leave without pay, a lateral transfer, or anything else to help her. (Doc. 40 at 17.)

The court asked whether Kingsolver had made one or eight requests for accommodation because "looking at your complaint, it looks like you really set forth one request for accommodation, but as the case progressed, you seem to have been positing that there were actually eight." (Doc. 40 at 17.) Counsel answered, "there are seven at the very least in my opinion." (Doc. 40 at 17.) He complained that Lattany-Reed and Brandon never identified other options besides the GS-7 transfer or engaged in the interactive process to find Kingsolver an appropriate accommodation. (Doc. 40 at 19.) He acknowledged his failure to identify any case law showing that a failure to follow a reasonable-accommodation manual constitutes a violation of the Rehabilitation Act. (Doc. 40 at 20.) And, he told the court that besides the affidavits of Dr.

Jones and Dr. Moran, there was no record evidence to support that Kingsolver's conditions qualified as disabilities. (Doc. 40 at 20.)

The Attorney General's counsel responded that regardless of what was written on any final disposition form, Kingsolver was reasonably accommodated because she had received the transfer that she had asked for in the DOJ-100A form. (Doc. 40 at 21.) As for Kingsolver's argument that her supervisors did not give her any other options, counsel argued that "it's the employee's burden to identify a specific reasonable accommodation and that the employer's duty to engage in the interactive process is not triggered until that happens." (Doc. 40 at 22.)

### H. The district court granted summary judgment, finding that Kingsolver's pre-October 2007 claims were time barred and unreasonable and that her October 2007 transfer was not coerced.

The court issued a written order granting the Attorney General's motion for summary judgment, finding that Kingsolver failed to show a violation of the Rehabilitation Act. (Doc. 33 at 1, 30.) The court assumed without deciding that Kingsolver was a qualified individual with a disability, but it found that she failed to show that she was subjected to discrimination. (Doc. 33 at 7, 9.)

First, the court found that any pre-October 2007 claims regarding accommodation requests were time time-barred. (Doc. 33 at 10.) Kingsolver had not contacted the DOJ's EEO staff until November 16, 2007, which, under the regulation applicable to the Rehabilitation Act, was beyond the 45-day window to initiate administrative review for each of the seven accommodation denials. (Doc. 33 at 10-11, 13-14.) Equitable tolling did not apply because Kingsolver had completed EEO training, which had explained her obligations in the reasonable-accommodation process and had included a PowerPoint presentation covering the 45-day deadline. (Doc. 33 at 14, 16.) The court noted that Kingsolver's supervisors had engaged in "'an interactive and flexible process . . . to identify an effective accommodation' as required by the DOJ manual." (Doc. 33 at 16.) They had given Kingsolver the DOJ-100A form. (Doc. 33 at 16.) But, Kingsolver had submitted the form over two months later because she was waiting for new positions to become available for lateral transfer. (Doc. 33 at 16.) The court concluded that this "delay was completely within [Kingsolver's] control" and did "not warrant the extraordinary remedy of equitable tolling." (Doc. 33 at 17.)

Second, the court found that the ATF did not discriminate against Kingsolver when it granted her request for transfer to the GS-7 role. (Doc. 33 at 17.) Kingsolver failed to establish that her acceptance of the GS-7 position was coerced or involuntarily extracted. (Doc. 33 at 19, 21.) The court further found that Kingsolver failed to show that her other claimed accommodation requests for lateral transfer, leave without pay, or any other help were reasonable. (Doc. 33 at 30.) It was "undisputed that no GS-9 position for which [Kingsolver] was qualified existed at the relevant time." (Doc. 33 at 23.) Her request for leave without pay was unreasonable because she had "simply wanted to get away from her job." (Doc. 33 at 23.) She did not point to any evidence stating that she had "requested leave for a specific period of time." (Doc. 33 at 23.) And, even if Kingsolver had provided the ATF with information about her depression, the Rehabilitation Act did not require the ATF to speculate about her accommodation needs or "create a new position, move another employee from his or her position, or promote [Kingsolver]." (Doc. 33 at 22, 26, 29.) Still, the court noted that the ATF had

> expend[ed] time and expense to explore the universe of reasonable accommodations by meeting with [Kingsolver] on numerous occasions, suggesting the ATF's [EAP], promptly moving her to an office with a window, giving her the Request

> for Reasonable Accommodation form a few months before it was submitted, and keeping her apprised of the lack of a vacant position for a lateral transfer.

(Doc. 33 at 28-29.)

The court entered judgment in favor of the Attorney General and Kingsolver timely filed her notice of appeal. (Docs. 34-35.)

### III. Standards of Review.

This Court reviews, de novo, a district court's grant of summary judgment, considering only the evidence available to the district court. *Holloman v. Mail-Well Corp.*, 443 F.3d 832, 836 (11th Cir. 2006). When review is de novo, this Court may affirm for any reason supported by the record, even if not relied upon by the district court. *Worthy v. City of Phenix City*, 930 F.3d 1206, 1216-17 (11th Cir. 2009). In general, this Court will not review issues not presented to the district court. *See Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331-32 (11th Cir. 2004). Ordinarily, this Court treats as abandoned an issue that a party fails to prominently raise on appeal. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681-82 (11th Cir. 2014).

## SUMMARY OF ARGUMENT

Kingsolver claims that the district court incorrectly granted the

Attorney General summary judgment because there were genuine issues of material fact to show that her employer, the ATF, discriminated against her under the Rehabilitation Act when it: (1) denied "at least five" pre-October 2007 requests for leave without pay, lateral transfer at the GS-9 level, and general help to accommodate her depression and cardiac arrythmia; and (2) involuntarily demoted her in October 2007. (Kingsolver Br. 20-22, 46.) Kingsolver's claims are unavailing. One, the Court should not consider her pre-October 2007 claims because she fails to properly raise the issue regarding them on appeal, and she failed to properly raise them below. Two, she fails to meet the Rehabilitation Act's liability standards as required to defeat summary judgment. Accordingly, the district court's summary-judgment ruling should be affirmed.

## ARGUMENT

**The district court's entry of summary judgment on Kingsolver's discrimination claims in favor of the Attorney General should be affirmed because: (1) some of Kingsolver's claims are not properly before the Court; and (2) Kingsolver fails to establish a prima facie case of discrimination under the Rehabilitation Act.**

### A. The Court should not consider the pre-October 2007 claims.

**1. Pre-October 2007 Issue Abandoned.**

First, Kingsolver abandoned her claim regarding the ATF's alleged denials of her "at least five" pre-October 2007 requests. "[A]n appellant's brief must include an argument containing appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." *Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) (cleaned up). "[S]imply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue and precludes [this Court] considering the issue on appeal." *Id.* "Abandonment of a claim or issue can also occur when the passing references to it are made in the 'statement of the case' or 'summary of the argument.'" *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 682 (11th Cir. 2014).

Here, Kingsolver's brief fails to identify which of the "at least five" requests were discriminatorily denied. (Kingsolver Br. 20-38.) In her statement of the case, Kingsolver outlines a timeline of events from April 2007 to October 2007, but she fails to indicate which of these events were the discriminatory ones. (Kingsolver Br. 8-18, 20-38). Nor does the record reflect which events she is challenging. Below, she initially

identified seven discriminatory pre-October 2007 events but then claimed there were six. In response to the Attorney General's interrogatories, she listed seven events—two in April 2007, one in May 2007, two in June 2007, one in July 2007, and one in August 2007. (Doc. 21-13 at 3-5.) Then, in her response to the Attorney General's summary-judgment motion, she claimed only six events were discriminatory—this time only one in April 2007. (Docs. 26 at 4 n.4, 14; 40 at 17.) Now, she claims "at least five" events were discriminatory. (Kingsolver Br. 20.) But, she does not specify which of the seven or six events were discriminatory. Therefore, the Court should not consider any pre-October 2007 claim.

**2. Pre-October 2007 Claims Not in Complaint.**

Second, the pre-October 2007 claims were not properly before the district court. "Federal Rule of Civil Procedure 8(a) requires that a complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Brown v. Snow*, 440 F.3d 1259, 1266 (11th Cir. 2006). Claims not pleaded in the complaint are not properly before the district court for consideration. *See id.* (holding that retaliation claim "was not properly before the district court" because it

was not alleged in the complaint). Here, Kingsolver only identified the October 2007 transfer as the alleged act of discrimination in her complaint. (Doc. 1 at 7-8.) Although she later identified the pre-October 2007 events during discovery, this identification does not satisfy the requirement of Rule 8(a). *See Brown*, 440 F.3d at 1266 (holding that, under Rule 8(a), the district court correctly refused to address allegation that was discussed in a deposition but not pleaded in the complaint); *see also Coon v. Ga. Pac. Corp.*, 829 F.2d 1563, 1568-71 (11th Cir. 1987) (holding that the district court correctly declined to try claims, described in pre-trial stipulation and memo in opposition to motion to dismiss, but not pleaded in the complaint). Therefore, the Court should not consider any pre-October 2007 claim for this additional reason.

### B. Kingsolver fails to meet the Rehabilitation Act's liability standards.

Even if the Court considers Kingsolver's pre-October 2007 claims, she loses because she cannot show a prima facie case of discrimination under the Rehabilitation Act.

#### 1. Summary-Judgment Standard.

Summary judgment is appropriate when the record evidence shows that there is no genuine dispute as to any material facts and the moving

party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When the nonmoving party has the burden of proof at trial, the moving party is not required to support its summary-judgment motion with evidence; it may meet its initial burden by pointing out to the district court that the nonmoving party lacks evidence supporting her case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, who must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (quoting Fed. R. Civ. P. 56).

A "genuine issue for trial" exists only where the nonmoving party presents sufficient evidence for a jury to return a verdict in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The nonmoving party must do "more than simply show that there is some metaphysical doubt as to material facts" to defeat a summary-judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Although the Court must draw all reasonable inferences from the evidence in favor of the nonmoving party, the Court need not draw unreasonable inferences, like those supported only by the nonmoving

party's speculation. *See Brown*, 440 F.3d at 1266. If the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, summary judgment must be granted. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1294 (11th Cir. 2005). The substantive law underlying the plaintiff's complaint determines which facts are material. *See Anderson*, 477 U.S. at 248. Here, the substantive law is the Rehabilitation Act.

**2. Rehabilitation-Act Standards.**

The Rehabilitation Act prohibits federal agencies from discrimination against employees based on their disabilities. *Sutton v. Lader*, 185 F.3d 1203, 1207 (11th Cir. 1999). "Discrimination claims under the [Americans with Disabilities Act ("ADA")] and the Rehabilitation Act are governed by the same standards, and the two claims are generally discussed together." *J.S., III ex rel. J.S. Jr. v. Houston Cnty. Bd. Of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017). As such, "[c]ases decided under the Rehabilitation Act are precedent for cases under the ADA, and vice-versa." *Cash v. Smith*, 231 F.3d 1301, 1305 n.2 (11th Cir. 2000). "To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that (1) [s]he has a

disability, (2) [s]he is otherwise qualified for the position, and (3) [s]he was subjected to unlawful discrimination as a result of [her] disability." *Boyle v. City of Pell City*, 866 F.3d 1280, 1288 (11th Cir. 2017). The plaintiff must also exhaust procedural remedies concerning any allegedly discriminatory act through an internal complaint process with the employing agency before challenging the act in federal court. *See* 29 U.S.C. § 794(a); 42 U.S.C. § 2000e-16(b); 29 C.F.R. § 1614.105(a)(1).

Kingsolver fails to meet these standards. Her pre-October 2007 claims of discrimination are unexhausted. Nor can she show that she was a qualified individual with a disability who was subjected to unlawful discrimination.

**3. Pre-October 2007 Claims Unexhausted.**

Kingsolver did not exhaust the internal complaint process for her pre-October 2007 discrimination claims. To preserve the right to maintain a suit alleging employment discrimination against an agency of the United States, a claimant must exhaust her administrative remedies by filing a claim of discrimination with the allegedly offending agency in accordance with published procedures. 29 C.F.R. § 1614 *et seq.* Federal regulations require an aggrieved person to consult a counselor prior to

submitting a formal complaint. 29 C.F.R. § 1614.105(a). Such contact must be made within 45 days of the allegedly discriminatory actions to exhaust her remedies. 29 C.F.R. § 1614.105(a)(1); *Shiver v. Chertoff*, 549 F.3d 1342, 1344 (11th Cir. 2008). Kingsolver concedes that she failed to timely contact a counselor for any of her pre-October 2007 claims. (Kingsolver Br. 21.) But, she alleges that she is entitled to equitable extension or, alternatively equitable tolling.[13] (Kingsolver Br. 21-22.) Kingsolver's allegations are unavailing.

**i. No Equitable Extension.**

Kingsolver, first, argues that she is entitled to equitable extension because she was "not informed of the time limit" and that "the issue of timeliness was never raised" during the administrative review of her claims. (Kingsolver Br. 21.) As an initial matter, Kingsolver failed to make these arguments to the district court. (Doc. 26 at 14-19.) So, it

[13] Below, the district court relied on *Abram v. Fulton Cnty. Gov't,* 598 F. App'x 672 (11th Cir. 2015) to find that the continuing-violation doctrine did not apply to Kingsolver's claims. (Doc. 33 at 12-14.) Kingsolver argues that *Abram* is factually and procedurally distinguishable from her case. (Kingsolver Br. 25). However, Kingsolver does not challenge the court's no-continuing-violation finding. Nor does she argue that her pre-October 2007 claims are exhausted because the continuing-violation doctrine applies. (Kingsolver Br. 27.) Therefore, her argument is irrelevant.

should not be considered. *See Access Now, Inc.*, 385 F.3d at 1331. In any event, she is not entitled to an extension. An extension of the 45-day time limit is mandated when an "individual shows that he or she was not notified of the time limits and was not otherwise aware of them." 29 C.F.R. § 1614.105(a)(2). Here, Kingsolver received annual EEO training, which informed her about the 45-day deadline. (Docs. 21-1 at 1-3, 6, 43, 84; 21-17 at 2; 26-1 at 1-2; 29-1 at 2; 26 at 5 n.5.) She acknowledges that she received this training, but she asserts in a footnote that she did not understand this deadline to be mandatory. (Kingsolver Br. 26 n.5.) Notification is all that is required by the regulations; understanding is not. *See* 29 C.F.R. § 1614.105(a)(2). Accordingly, Kingsolver had notice of the time limits.

And, the failure to make the timeliness argument at the administrative stage does not preclude the Attorney General from making the same argument later. *See Oaxaca v. Roscoe*, 641 F.2d 386, 389-90 (5th Cir. 1981) ("[W]e reject Oaxaca's contention that the federal agency, by merely accepting and investigating a tardy complaint, automatically waives its objection to the complainant's failure to comply with the prescribed time delays."). So, Kingsolver's time for filing her

pre-October 2007 claims is not subject to extension.

**ii. No Equitable Tolling.**

Nor are Kingsolver's pre-October 2007 claims subject to equitable tolling. Kingsolver argues that she is entitled to equitable tolling because she, essentially, was discriminated against, under the Rehabilitation Act, like the plaintiff in *Wilson v. Sec'y of Veterans Affairs VA*, No. 20-10799, 2022 U.S. App. LEXIS 15303 (11th Cir. June 3, 2022). (Kingsolver Br. 21-22, 24, 31-32.). One, *Wilson* is not applicable. In *Wilson*, this Court reversed the district court's order of summary judgment against a veteran in favor of her employer, the Department of Veterans Affairs ("VA"), concluding that there were genuine factual disputes about whether the VA had discriminated against the veteran employee under the Rehabilitation Act. *Wilson*, 2022 U.S. App. LEXIS 15303, at *1-2. *Wilson* involved no issue—nor any discussion—regarding the administrative-exhaustion filing deadline. *See, e.g.*, *United States v. Penn*, 63 F.4th 1305, 1310 (11th Cir. 2023) ("[A]ssumptions are not holdings. And any 'answers' to questions neither presented nor decided are not precedent.") (cleaned up).

Two, showing discrimination is not the standard to apply equitable tolling. If this were the standard—that is simply meeting the element of the underlying claim—it would eviscerate the purpose of the exhaustion requirement. Rather, equitable tolling is an extraordinary remedy to be applied sparingly. *Arce v. Garcia*, 434 F.3d 1254, 1261 (11th Cir. 2006). It is appropriate only when a plaintiff untimely files due to extraordinary circumstances that are both beyond her control and unavoidable even with diligence. *Id.* It typically requires some affirmative misconduct, such as fraud, misinformation or deliberate concealment. *Jackson v. Astrue*, 506 F.3d 1349, 1355-56 (11th Cir. 2007). Here, Kingsolver states that when she heard nothing from Lattany-Reed after submitting her DOJ-100A accommodation form on October 1, 2007, she identified the ATF accommodation coordinator herself and contacted her. (Kingsolver Br. 16.) So, Kingsolver could have contacted a counselor and strategically chose not to in the hopes of obtaining her preferred outcomes of lateral transfer and leave without pay. (Kingsolver Br. 34.)

Nonetheless, Kingsolver further argues that her supervisors had misrepresented that leave without pay was an unavailable option. (Kingsolver Br. 22.) This argument also fails. First, below, Kingsolver

stated that she had received annual training, which had informed her that unpaid leave was a form of reasonable accommodation. (Doc. 26 at 5 n.5, 23 n.12.) So, she had more reason to seek out a counselor to complain about her supervisors' denial of her request. But, she did not. Second, she does not argue or allege that anything or anyone prevented her from reaching out to an EEO counselor or misled her about her rights to meet with an EEO counselor. So, her conduct in failing to timely consult a counselor about her pre-October 2007 claims were not due to extraordinary circumstances beyond her control or unavoidable even with diligence. *Arce*, 434 F.3d at 1261. Kingsolver cannot now blame the ATF for her decision to wait for preferred outcomes. Thus, her pre-October 2007 discrimination claims are administratively unexhausted, making the Attorney General entitled to summary judgment for these claims.

**4. No Discrimination.**

In any event, Kingsolver fails to show that she was subjected to unlawful discrimination for either her pre-October 2007 claims or her October 2007 transfer. "An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide

'reasonable accommodations' for the disability—unless doing so would impose undue hardship on the employer." *Lucas v. W.W. Grainger*, Inc., 257 F.3d 1249, 1255 (11th Cir. 2021). An accommodation is "reasonable" only if it allows the employee to perform the job's essential functions. *Id.* at 1255. The plaintiff bears the burden of identifying a reasonable accommodation. *Boyle*, 866 F.3d at 1289. And, the employee must make a specific demand for a reasonable accommodation. *Gaston v. Bellingrath Gardens & Home, Inc.*, 167 F.3d 1361, 1363 (11th Cir. 1999). Once the employer is on notice of the employee's disability and accommodation request, it must "make a reasonable effort to determine the appropriate accommodation." *Id.* at 1364 (cleaned up). This effort may involve an informal, interactive process with the employee. 29 C.F.R. § 1630.2(o)(3). Only when the employer fails to provide the accommodation after it was demanded can the plaintiff sustain a discrimination claim under the Rehabilitation Act. *See Gaston*, 167 F.3d at 1363-64. Here, the ATF did not deny any reasonable accommodation requests made by Kingsolver.

**i. No Pre-October 2007 Discrimination.**

Kingsolver claims that, before October 2007, she had made "at least five different requests over a five-month period for leave without pay, a

lateral transfer at the GS-9 level, or any suggestion that would help." (Kingsolver Br. 20.) Kingsolver's claim is unsupported. The credible evidence shows that Kingsolver had only made two requests in May 2007 and one request in July 2007. (Docs. 21-17 at 5-9; 26-1 at 3-5; 21-7 at 9-10; 21-9 at 1, 6-8; 21-10 at 1; 21-11 at 1; 21-5 at 10, 37; 21-4 at 49-50.) On May 21, 2007, Kingsolver had asked her supervisors for an indefinite period of leave without pay or a transfer to a new role at a comparable grade level. (Docs. 21-17 at 5; 26-1 at 3; 21-7 at 9-10.) On July 19, 2007, Kingsolver had asked her supervisors for a lateral transfer. (Docs. 21-17 at 8; 26-1 at 5; 21-4 at 49.) In 2016, Kingsolver testified that in April and July 2007, she had asked "if I could take leave without pay, a lateral transfer, or what else could be done to help me." (Doc. 23-6 at 7, 13.) However, when she testified in 2009 and 2012, she did not testify to these same facts. (Docs. 23-4 at 46, 50-51; 23-5 at 12.) Her later contrary testimony should be disregarded. *See Brown*, 440 F.3d at 1266 (holding that the district court correctly entered summary judgment against the plaintiff's claim because it was unreasonable to infer facts from the plaintiff's "speculative testimony alone").

Regardless, Kingsolver's purported accommodation requests were

unreasonable. First, Kingsolver's transfer request was unreasonable because reassignment is only a reasonable accommodation if a position for which the plaintiff is qualified is available. *See Willis v. Conopco, Inc.*, 108 F.3d 282, 284 (11th Cir. 1997). Here, there were no GS-9 roles available for transfer. (Docs. 21-17 at 5, 9-10; 26-1 at 3, 5-6; 21-7 at 9-10; 21-4 at 71; 21-5 at 8, 29:12-25.) Kingsolver even stipulated during the administrative proceedings that no such roles were available. (Doc. 21-5 at 79.) And, she concedes on appeal that no GS-9 positions had materialized. (Kingsolver Br. 15.) Second, Kingsolver's request for leave without pay was not reasonable. She asserts that her "wish was to go on leave without pay, get myself together, and come back to work." (Kingsolver Br. 41.) But, a request for leave so an employee can return to work at "some uncertain point in the future" is not a reasonable accommodation. *Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003).

Moreover, the ATF did not fail to accommodate Kingsolver because it had always approved her leave when she had experienced stress. In *Porterfield v. SSA*, No. 20-10538, 2021 U.S. App. LEXIS 26129, at *18 (11th Cir. Aug. 30, 2021), the district court granted the Social Security Administration ("SSA") summary judgment against the plaintiff on her

failure-to-accommodate claims under the Rehabilitation Act because the plaintiff had asked for indefinite leave. *Id.* at *17-18. This Court affirmed the grant of summary judgment in favor of the SSA, holding that "[e]ven assuming that [the plaintiff] . . . did not ask for indefinite leave, [she] testified that she was never denied any leave when she requested it." *Id.* at *18. Similarly here, the ATF had never denied Kingsolver any leave she had requested for her stress. For example, the ATF had approved Kingsolver's sick leave request after she claimed that she had "[fallen] apart" from stress at work.[14] (Kingsolver Br. at 15-16.) The ATF had also approved a two-week vacation for her and had offered her liberal use of her annual and sick leave. (Docs. 21-17 at 5, 8; 26-1 at 3, 5; 27-5 at 7, 25:18-25; 1 at 3; 13 at 3.) Notably, her complaint alleged that she had accrued "240-plus hours of annual leave"—meaning that the ATF was willing to approve at least 30 days of leave to accommodate her. (Doc. 1 at 3.) So, like the SSA in *Porterfield*, the ATF had never failed to accommodate Kingsolver. Although Kingsolver had preferred to use her accrued leave to see her son in Alaska, (Kingsolver Br. 10), the

---

[14] Kingsolver states that she "had no history of . . . requesting leave," (Kingsolver Br. 41) while simultaneously acknowledging this leave that she took. (Kingsolver Br. 15-16.)

Rehabilitation Act does not impose liability on an employer for its failure to provide "all the accommodations [the employee] feels are appropriate." *See Doe v. Dekalb Cty. Sch. Dist.*, 145 F.3d 1441, 1451 (11th Cir. 1998).

Third, Kingsolver's request for general help was not reasonable because "the word 'reasonable' would be rendered superfluous in the [Rehabilitation Act] if employers were required in every instance to provide employees the maximum accommodation or every conceivable accommodation possible." *Stewart v. Happy Herman's Cheshire Bridge*, 117 F.3d 1278, 1285 (11th Cir. 1997). Nevertheless, the ATF made other suggestions to help Kingsolver. Lattany-Reed had discussed with Kingsolver the availability of employee resources. (Docs. 21-8 at 1; 21-7 at 11-12.) Lattany-Reed and Brandon had also met with Kingsolver on several occasions and had listened to her about her cardiac arrythmia, depression, and stress. (Docs. 21-17 at 5, 8; 26-1 at 3-5; 21-5 at 7-10; 29-1 at 6.) And, they had moved her into an office with a window, and had offered her liberal leave and a flexible schedule. (Docs. 21-17 at 8; 26-1 at 5; 1 at 3; 13 at 3.) They had even formally initiated the accommodation process by providing her with DOJ's official reasonable accommodation form. (Docs. 21-17 at 8; 26-1 at 5; 21-4 at 49; 21-12 at 1.)

However, Kingsolver alleges that the ATF had not engaged in the interactive process in good faith and had failed to follow DOJ policy and procedures, which recommend "flexible work schedules, the ability to telecommute and extended leave as possible reasonable accommodations." (Kingsolver Br. 23, 42, 45.) Kingsolver's allegation is without merit. One, the ATF did not have to engage in the interactive process because Kingsolver had failed to make any reasonable request for accommodation. *Owens v. Georgia, Governor's Off. of Student Achievement*, 52 F.4th 1327, 1335 (11th Cir. 2022). The Rehabilitation Act "is not intended to punish employers for behaving callously if, in fact, no accommodation for the employee's disability could reasonably have been made." *See Willis*, 108 F.3d at 285.

Two, "[a] particular accommodation is not necessarily reasonable, and thus federally mandated, simply because the [employer] elects to establish it as a matter of policy." *See Duckett v. Dunlop Tire Corp.*, 120 F.3d 1222, 1225 (11th Cir. 1997) (quoting *Myers v. Hose*, 50 F.3d 278, 284 (4th Cir.1995)). Nonethless, as outlined above, the undisputed evidence shows that the ATF had offered Kingsolver extended leave and flexibility in her work schedule. (Docs. 21-17 at 8; 26-1 at 5; 1 at 3; 13 at 3.) Indeed,

Kingsolver's complaint acknowledged that the ATF had made these accommodations. (Doc. 1 at 3.) And, Kingsolver had never requested to telecommute. (Docs. 21-17 at 12; 26-1 at 6-7.) Thus, Kingsolver fails to show that she was subjected to discrimination by the ATF before October 2007.

**ii. No October 2007 Discrimination.**

Kingsolver also fails to show discrimination for her transfer to the open Management Assistant GS-7 position in October 2007. "[A] transfer cannot be because of disability if it occurred as a result of an employee's own request." *Doe*, 145 F.3d at 1454 (cleaned up). Here, Kingsolver agrees that she requested the transfer. (Kingsolver Br. 21, 37.) So, her transfer could not have been discriminatory. *See D'Angelo v. Conagra Foods*, 422 F.3d 1220, 1236 (11th Cir. 2005) ("[A] qualified individual is discriminated against when his employer fails to reasonably accommodate his disability."). However, Kingsolver argues that her transfer was not voluntary in light of *Hargray v. City of Hallendale*, 57 F.3d 1560 (11th Cir. 1995) because she was forced to choose between staying on the job with newly-imposed GS-12 responsibilities or accepting the transfer, she was not allowed to determine the transfer

date, she was given less than 24 hours to accept the transfer offer, and she based it on the misrepresentation that she could not take leave without pay. (Kingsolver Br. 22.) Kingsolver's argument is unavailing.

First, Kingsolver's argument is waived because she failed to raise this argument in response to the Attorney General's motion for summary judgment. *See Transamerica Leasing, Inc. v. Institute of London Underwriters*, 267 F.3d 1303, 1308 n.1 (11th Cir. 2001) (holding that arguments not raised in response to a summary-judgment motion are waived for purposes of appeal). Below, she simply argued that her transfer had been coerced because her amended DOJ-100A form, on which she had requested the transfer, had been "dictated or typed by Lattany-Reed." (Doc. 26 at 13-14) (cleaned up.) Moreover, the district court directly asked Kingsolver about why the transfer was not a reasonable accommodation. (Doc. 40 at 16.) And, she did not raise this argument. (Doc. 40 at 17.) "[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it." *In re Pan Am. World Airways, Inc.*, 905 F.2d 1457, 1462 (11th Cir. 1990).

Second, Kingsolver's argument is factually unsupported. (Kingsolver Br. 21-22, 33, 35, 39, 44, 46.) And, "conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment." *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). Third, *Hargray* is inapplicable. There, the plaintiff brought an action pursuant to 42 U.S.C. § 1983, claiming that the City had violated his due process rights by forcing him to resign from his employment without a hearing because the police had led him to believe that if he did not resign, he could and would be prosecuted for grand theft. *Hargray*, 57 F.3d at 1567. This Court held that the City did not deprive the plaintiff of his due-process rights because, under the totality of the circumstances, the plaintiff's resignation was voluntary. *Id.* at 1563. The case involved a constitutional-deprivation issue. *Id.* at 1567. It did not involve any employment discrimination like Kingsolver's case.

The applicable case, here, is *Doe*. In *Doe*, the plaintiff, a schoolteacher who suffered from HIV, sued his school district under the ADA for disability discrimination. *Doe*, 145 F.3d at 1444-45. He had taught children who were often aggressive, engaging "in acts of violence

such as biting, hitting, scratching, and kicking." *Id.* at 1444. Fearing that violence and subsequent blood-to-blood contact with the plaintiff might lead to transmission of HIV, the school district transferred the plaintiff to teach other children. *Id.* The parties disputed whether this transfer was voluntary; the school district emphasized that the plaintiff had signed a transfer form, while the plaintiff argued that he had no choice but to sign. *Id.* This Court held "that the voluntary or involuntary nature of the transfer is not relevant." *Id.* at 1454. Rather, the standard is objective. *Id.* at 1449. To establish disability discrimination, the plaintiff "must demonstrate that a reasonable person in his position would have found his transfer to be adverse under all the facts and circumstances." *See id.* at 1453.

Here, Kingsolver fails to show an objectively adverse transfer. Kingsolver never asked for leave without pay on either her original or amended DOJ-100A forms. (Docs. 21-17 at 10-11; 26-1 at 6; 21-4 at 79; 21-12 at 1; 21-14 at 1; 23 at 16; 33 at 4.) She only asked for a transfer to a comparable position outside of the Budget team where she would not have to work in FReD. (Docs. 21-17 at 10; 26-1 at 6; 21-12 at 1; 23 at 16; 33 at 4.) But, no such GS-9 positions were available for transfer. (Doc.

21-17 at 5, 9-10; 26-1 at 3, 5-6; 21-4 at 71, 21-5 at 8, 29; 21-7 at 9-10.) The only open position was a Management Assistant GS-7 position. (Doc. 29-1 at 9; 26-1 at 6; 21-4 at 73.) Kingsolver considered this option overnight and "consulted with her husband" before deciding to take the GS-7 position. (Docs. 23-7 at 11; 30-2 at 11; 21-17 at 10-11; 26-1 at 6; 21-4 at 78-79.) When she met with her supervisors to formalize the transfer request, she thanked them and smiled "from ear to ear." (Docs. 21-17 at 11; 26-1 at 6-7; 29-1 at 10-11; 21-4 at 80; 21-5 at 17, 68:5-15, 32, 127:18-19; 21-7 at 77.) She stated that she "was happy because of the relief of the stress" from having to work in FReD. (Doc. 21-4 at 80.) By early 2008, her depression and cardiac arrythmia had returned to "normal" and she was experiencing less stress. (Docs. 21-17 at 12; 26-1 at 6-7; 21-7 at 51.) Thus, under all these facts and circumstances, Kingsolver's transfer was not objectively adverse.

Still, she complains that her transfer was simply a personnel action made at her request instead of the approval of her amended DOJ-100A form. (Kingsolver Br. 37.) First, her complaint is unsupported. Second, regardless of how her transfer was processed, it was still made. (Docs. 21-17 at 12; 26-1 at 6-7; 21-15 at 1.) So, there was no failure to

accommodate and, hence, no discrimination. *See Lucas*, 257 F.3d at 1255; *see also Porterfield*, 2021 U.S. App. LEXIS 26129, at *18. Accordingly, Kingsolver fails to show that a reasonable jury could find the ATF liable under the Rehabilitation Act for denying any reasonable accommodation.

**5. Not Qualified or Disabled.**

Nor does Kingsolver show that she was a qualified individual with a disability. In 2007, a qualified individual with a disability was defined as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (2007). Essential functions "are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Holly v. Clairson Indus. L.L.C.*, 492 F.3d 1247, 1257 (11th Cir. 2007). An employee's refusal to perform the essential functions of a job renders her unqualified for the job. *See Lucas*, 257 F.3d at 1260 n.8. Even a "relative[ly] infrequen[t]" inability to perform a job's essential functions is enough to render a plaintiff not a "qualified individual." *Holbrook v. City of Alpharetta*, 112 F.3d 1522, 1528 (11th Cir. 1997).

Further, disability was defined as "(A) a physical or mental

impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102 (2007). "Major life activities [we]re defined in the regulations as 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Hilburn v. Murata Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226-27 (11th Cir. 1999) (quoting 29 C.F.R. § 1630.2(i) (1997)).

Here, the undisputed facts establish that working in FReD was an essential function of Kingsolver's Management Analyst GS-9 position. (Docs. 21-17 at 2; 26-1 at 2; 23-1 at 84; 23-7 at 2; 30 at 16 n.15.) Kingsolver repeatedly complained that FReD was causing her stress and worsening her cardiac arrythmia and depression[15]—so much so that it "hamper[ed] her ability to work." (Docs. 21-17 at 3-4, 7-8; 26-1 at 2-5; 21-5 at 5-10, 13; 26 at 25; 29 at 3 n.1.) Moreover, there is no evidence that

---

[15] Depression was not listed as a disability in the ADA until the ADA Amendments Act of 2008. *See* ADA Amendments Act of 2008, Pub. L. No. 110-325, 122 Stat 3553. Therefore, depression did not, per se, constitute a disability under the ADA and, hence, the Rehabilitation Act, at all times relevant to this case in 2007. *See, e.g., Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1133 (11th Cir. 1996).

would allow a factfinder to conclude that Kingsolver's depression or cardiac arrythmia impaired any major life activities. At most, her conditions were intermittent, temporary, or episodic because she testified that they were caused only by FReD. (Docs. 21-7 at 75; 1 at 4; 21-5 at 32.) And, there is no evidence that, between April and October 2007, her conditions impaired her ability to care for herself, perform manual tasks, walk, see, hear, speak, breathe, learn, or work.

Kingsolver also failed to disclose any expert witnesses during discovery. (Docs. 25-5 at 6; 25-1 at 5.) So, no factfinder can rely on medical testimony to link her conditions to any specific impairments. *See Nogara v. Lynn Law Off., P.C.*, No. 23-14135, 2024 U.S. App. LEXIS 25585, at *6 (11th Cir. Oct. 10, 2024) (holding that the district court did not err in granting the defendants summary judgment because the plaintiff failed to proffer expert testimony to establish an element of the claim). Accordingly, Kingsolver fails to show that she was a qualified individual with a disability as a matter of law. *See id.* at *7 (holding that because the plaintiff failed to introduce expert testimony required to prove her claims, they failed as a matter of law).

Consequently, the district court did not err in granting summary judgment for the Attorney General because Kingsolver failed to establish a prima facie case of discrimination under the Rehabilitation Act.

## CONCLUSION

The Attorney General respectfully requests this Court affirm the judgment of the district court.

MARGARET E. HEAP
UNITED STATES ATTORNEY

***/s/ Channell V. Singh***
Channell V. Singh
Assistant United States Attorney
Georgia Bar No. 216540
*channell.singh@usdoj.gov*

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number: 912-652-4422

## CERTIFICATE OF COMPLIANCE AND SERVICE

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface (14-point Century Schoolbook) using Microsoft Word 2016.

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because it contains 10,984 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief was filed today through this Court's ECF system, and thereby served on counsel of record for Annette Kingsolver, Mary Helen Moses and Andrew M. Ruberti, at their Court-registered email addresses, pursuant to Fed. R. App. P. 25(c)(1)(C) and 25(c)(2), and 11th Cir. R. 25-3(a).

This 26th day of August, 2025.

Respectfully submitted,

MARGARET E. HEAP
UNITED STATES ATTORNEY

***/s/ Channell V. Singh***
Channell V. Singh
Assistant United States Attorney
Georgia Bar No. 216540

*channell.singh@usdoj.gov*

Post Office Box 8970
Savannah, Georgia 31412
Telephone Number: 912-652-4422