APPEAL NO. 25-10656-G

IN THE
UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ANNETTE KINGSOLVER, Plaintiff-Appellant,
v.
U.S. ATTORNEY GENERAL,
U.S. DEPARTMENT OF JUSTICE, and
BUREAU OF ALCOHOL, TOBACCO and FIREARMS,
Defendants-Appellees.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA,
BRUNSWICK DIVISION

# REPLY BRIEF OF PLAINTIFF-APPELLANT ANNETTE KINGSOLVER

Mary Helen Moses
Mary Helen Moses, Esq., LLC
235 Olive Way
St. Simons Island, Georgia 31522
(912) 269-0907
maryhelenmoses@gmail.com

Andrew M. Ruberti
Ruberti Law Offices, LLC
104 Cater Street
St. Simons Island, GA 31522
(912) 266-1814
amr@rubertilaw.com

*Attorneys for Plaintiff-Appellant*

**TABLE OF CONTENTS**

Introduction……………………………………………………………...…1
Statement of Facts……………………………………………………………..2
Argument and Citation to Authority

I. Kingsolver's LWOP claims are not time-barred………………………5

A. The regulations mandate a waiver of the 45-day requirement…..….7

1. Kingsolver was not notified of the time limits…………………..……8

2. The Agency's EEO training did not adequately notify Kingsolver of the 45-day requirement…………………………9

3. The 45-day limit is subject to equitable tolling……………...…11

II. Kingsolver's repeated requests for LWOP were reasonable, her Demotion was involuntary, and the Agency's refusal to grant her reasonable accommodation was a violation of the Rehab Act………14

A. LWOP is a reasonable accommodation…………………………..15

B. The Agency's unlawful denial of Kingsolver's request for LWOP, its lies concerning LWOP availability, its lack of good faith in addressing Kingsolver's concerns, and its assignment of heavier duties to Kingsolver after she requested a reduction of work place stress resulted in Kingsolver's involuntary and discriminatory demotion…..……..18

Conclusion…………………………………………………………..…….25

Certificate of Compliance and Service……………………………………..…..26

# TABLE OF AUTHORITIES

Cases

*Billlups v, Emerald Coast Utilities Auth.,* 714 F.App'x 929 (11th Cir. 2017)……..16

*Doe v. Dekalb Cty. Sch. Dist.,* 145 F.3d 1441, 1451 (11th Cir. 1998)……...18, 22-23

*Duckett v. Dunlap Tire Corp.,* 120 F.3d 1222 (11th Cir, 1997)……………..……..16

*Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361 (11th Cir. 1999)…...19

*Hargray v. City of Hallendale,* 57 F.3d 1560 (11th Cir. 1995)………….....…...20-22

*Lucas v. W. W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2021)……….….…19

*Mullin v. Sec'y, Dept of Veterans Affs.,* 2022 WL 2159721 (M.D. Fla. June 15, 2022)…………………………………………………......….14

*Porterfield v. SSA,* No. 20-10538, 2021 U.S. App. LEXIS 26129 (11th Cir. 2021)……………………………………..…..……….…16-17

*Tarmas v. Mabus,* 2010 WL 3746636 (M.D. Fla. Sept, 21, 2010), *aff'd* *Tarmas v. Sec'y, U.S. Navy,* 433 F. App'x 754 (11th Cir. 2011) (per curiam)……….……………………………………………..………14

*Tolber v. James,* No. 2:13-CV-427-WKW, 2015 WL 2169950 (N.D. Ala. May 8, 2015)…………………………………………………16

*Wilson v. Sec'y of Veterans Affairs,* No. 20-10799, 2022 U.S. App. LEXIS 15303 (11th Cir. June 23, 2022)…………..…………………………......11-13

*Wood v. Green,* 323 F.3d 1309, 1314 (11th Cir. 2003)……………….……………16

Regulations

29 C.F.R. ¶ 1614.105(a)(1)……………………………………………...……..7

29 C.F.R. ¶ 1614.105(2)………………………………………………..……7-8

## INTRODUCTION

Plaintiff-Appellant Annette Kingsolver ("Kingsolver") brought this action to remedy the Defendants-Appellees' ("Government" or "Agency") failure to provide her a reasonable accommodation for her cardiac arrythmia and depression which ultimately led to her demotion from a GS-9 position to a GS-7 position with the concomitant loss of salary. The trial court, finding that Kingsolver's claim that the Agency unlawfully denied her leave without pay ("LWOP") was untimely and reasonable and thus not a violation of the Rehabilitation Act, granted summary judgment to the Government. The trial court's order was based on a misunderstanding of the Government's reasonable accommodation procedure and inapposite case law, and Kingsolver sought this appeal.

The Government's response to Kingsolver's brief raises irrelevant and incorrect factual and procedural arguments which obfuscate the primary issues in this case: Was Kingsolver's failure to inform the EEOC office within 45 days of her pre-October 1 denials fatal to her claim? Were Kingsolver's requests for LWOP unreasonable? Were her supervisors' repeated denials of LWOP, based on a misrepresentation of Agency policy, discriminatory? Was Kingsolver's demotion discriminatory? Kingsolver respectfully contends that the district court erred in

granting summary judgment and thus requests that this Court reverse the order granting summary judgment and remand the case for trial.

## STATEMENT OF FACTS

Kingsolver respectfully refers the Court to her Statement of the Case in her initial brief which sets forth the undisputed facts in detail. (Kingsolver Br. at 1-13). For purposes of this Reply, Kingsolver reiterates the following undisputed facts:

Kingsolver, who was a GS-9 management analyst for the Agency at its FLETC campus in Brunswick, Georgia, suffers from depression and cardiac arrhythmia, both of which are exacerbated by stress.[1] Both conditions worsened in early 2007[2]; in April, she was found at her desk crying uncontrollably. Assuming she was having personal issues, her supervisors Reed and Brandon gave her a counseling memo referring her to the Agency's Employee Assistance Program. Kingsolver informed Reed of her medical conditions and told Reed that workplace stress was causing her symptoms. Kingsolver asked for help, specifically a lateral (GS-9) transfer to a less

---

[1] The Government argues that Kingsolver is not a qualified individual with a disability. (Govt. Br. at 52). Because the district court did not make findings of fact regarding this issue, the Court should reject this argument.

[2] All dates herein are in the year 2007.

stressful position, LWOP, or other help. (Doc. 21-5 at 24:17-25:17).[3] Kingsolver subsequently provided medical documentation of her condition and made the same accommodations requests at least once a month for five months; each time, Reed and/or Brandon, who admittedly did not trust Kingsolver's motives,[4] told Kingsolver there were no lateral positions available and misrepresented that Kingsolver was ineligible for LWOP without first exhausting her accrued annual and sick leave.[5]

On October 1, after six months of repeated denials and worsening medical conditions, Kingsolver filed a DOJ Form 100A request for accommodation which had been provided to her on July 19. (Doc. 21-12). Because of her supervisors' misrepresentation concerning LWOP, Kingsolver requested only the lateral transfer and noted, "Work-related stress needs to be reduced as quickly as possible." (*Id.*)

---

[3]The Government argues that Kingsolver did not make a request in this meeting. (Govt. Br. at 4). None of the Government's citations to the record contradict Kingsolver's unrefuted testimony.

[4] In sworn statements, Brandon stated, "I personally doubt her intentions were ever genuine… [and] she did not like working for … an African American female." (Doc. 23-1 at 70); Reed stated Kingsolver should have been "more proactive and positive toward the day to day challenges of the job… (Doc. 23-1 at 60). Further, Reed and Brandon increased her duties a day or two after she filed her formal request for accommodation.

[5]Kingsolver testified without contradiction that requests for LWOP were made on April 26 (Doc. 21-5 at 24:25-26:17); May 21 (*id.* at 26:11-27:14; May 23 (*id.* at 29-7-30:16); June 19 (*id.* at 36:22-38:10): July 19 (*id.* at 45:4-46:23); August 16 (*id.* at 50:4-51:1); October 3 (*id.* at 57:2-23); October 9 (*id.* at 62:1-11).

Two days later, Kingsolver received an email informing her of new, additional, duties she would be required to perform. (Doc. 21-5 at 56:16-19). At that time, Reed told Kingsolver that there was a GS-7 position available and, again, that LWOP was not available because of the exhaustion rule. (Doc. 21-5 at 57:2-23). On October 9, Reed confirmed no LWOP was available; Reed also told her that the GS-7 position she had mentioned on October 3 might not materialize. If that was the case, Reed explained, Kingsolver's only option might be to stay in the GS-9 position, which her physician had advised her not to do. (Doc. 21-5 at 59:21-61:15). Feeling she had no choice but to take the demotion, Kingsolver amended her DOJ Form 100A request to say that she would take the GS-7 job. (Doc. 21-5 at 64:2-20; Doc. 21-13).

Kingsolver stayed at her job until November 25. (Doc. 23-1 at 89). She was moved from her window office (Doc. 23-5 at 56:17-19); met with Brandon and Reed on October 17 and was told that the demotion was effective (Doc. 21-5 at 68:30-69:4);[6] and, on October 30, received an annual performance rating from Reed of "fully successful", the lowest rating she had ever received during her career. (Doc. 21-5 at 19:7-18; Doc. 23-1 at 43-45; 55-60; 69; 94-98). Kingsolver consulted the

---

[6] This was the meeting where Kingsolver smiled and hugged Brandon, relieved and thankful "because I wasn't going to die of a heart attack in budget." (Doc. 21-5 at 68:5-69:4). The Government's contention that this meeting took place on October 10 is not supported in the record. It was at this meeting that Brandon gave her the DOJ Form 100B saying that her Form 100A was untimely. (Doc. 21-5 at 66:7-17).

Agency's EEO office on November 16, complaining that her demotion was forced and her performance rating retaliatory. (Doc. 23-1 at 43-45; 55-60; 94-98). After sixteen years of administrative review by the Agency and the EEOC, Kingsolver's claim was denied, and she received a right to sue letter. She timely filed her complaint under the Rehab Act which gave rise to this lawsuit.

## ARGUMENT AND CITATION TO AUTHORITY

The Government's brief raises factual and procedural issues that cloud the simple questions this Court must consider in its review of summary judgment. The undisputed facts and applicable law entitle Kingsolver to a trial on her claims.

### I. <u>Kingsolver's LWOP claims are not time-barred.</u>

It is undisputed that Kingsolver made requests for LWOP to Reed and/or Brandon in late April 2007, May 23, May 25, June 19, July 19, and August 16.[7] Doc.

[7] The Government maintains that Kingsolver's claim that she made "at least five different requests for [LWOP]" is "unsupported." (Govt. Br. at 39-40). The Government argues that "[t]he credible evidence shows that Kingsolver had only made two requests in May 2007 and one request in July 2007." (Govt. Br. at 40). In fact, Kingsolver's testimony concerning her requests is not contradicted in this record. *See* note 4, *supra.*

Nonetheless, the Government asks that this Court make credibility findings based on testimony that it deems contradictory and cites authority for a district court to grant summary judgment if a plaintiff's testimony is speculative. *Brown v. Snow,* 440 F.3d 1259, 1266 (11th Cir. 2006). Aside from the impropriety of asking this Court to make credibility findings, the Government essentially raises an issue of fact that renders summary judgment inappropriate.

33 at 2-5. On each occasion, Kingsolver was told falsely that she was ineligible for LWOP until she had exhausted her accrued annual and sick leave ("exhaustion rule").[8] (Doc. 21-5 at 24:25-26; at 27:2-14; at 27:15-30:16; at 42:12-50:3; at 51:11-16; at 54:10-17; at 63:16-19). There is no "exhaustion rule". Nonetheless, the Government argues that because Kingsolver did not notify the EEOC until November 16[9] after she perceived that her annual review was retaliatory, the denials

---

The Government further argues that Kingsolver has abandoned her claims because she did not identify which specific request was discriminatorily denied and made no argument concerning same, despite Kingsolver's clear arguments that each denial of LWOP based on a misrepresentation was discriminatory. (Govt. Brief at 28-29). Kingsolver respectfully submits that the Government's abandonment theory is untenable. The Government further argues that because the pre-October claims were not in the complaint, they were not properly before the district court, citing Fed. R. Civ. P. 8(a). It appears that the Government has waived this argument because it did not make it to the district court. Clearly, the district court considered the claims in its order granting summary judgment. Kingsolver respectfully submits that these procedural arguments have no merit and that the substantive issues are plainly before this Court.

[8] Both Reed and Brandon testified that they could not recall Kingsolver requesting LWOP. (Doc. 21-5 at 211:4-10; Doc. 21-5 at 332: 333:6), but Brandon admitted that he had applied the exhaustion rule. (Doc. 21-5 at 333:3-13). Reed actually testified that if Kingsolver had requested LWOP, Reed would have granted it. (Doc. 21-5 at 213:15-214:1) The Government takes the absurd position that Kingsolver knew that LWOP was available as a reasonable accommodation and should have complained to the EEO office at the first denial, as opposed to holding Reed and Brandon accountable for their misrepresentation. (Govt. Br. at 37-38). *See infra.*

[9] The Government takes issue with the idea that Kingsolver contacted EEO on November 11. Kingsolver respectfully notes that it was the EEO counselor herself who reported that Kingsolver first consulted her on November 11. *See* EEO Counselor's Report, Doc. 23-1 at 10. Another EEO counselor reported that

of LWOP were outside the 45-day deadline for filing complaints. 29 C.F.R. ¶ 1614.105(a); 105(a)(1). Kingsolver's failure to meet this time limit, according to the trial court[10] and the Government (Doc. 33 at 12-17; Govt Br. at 33-38), constitutes a failure to exhaust administrative remedies on all pre-October matters, and thus those claims are time-barred. Based on the applicable caselaw and regulations, this argument is untenable.

A. **The regulations mandate a waiver of the 45-day requirement.**

29 C.F.R. ¶ 1614.105(a)(1), which sets forth the 45-day limit, is followed by this language:

> The Agency or the Commission *shall* extend the 45–day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have been [*sic*] known that the discriminatory matter or personnel action occurred, that despite due diligence he or she was prevented by circumstances beyond his or her control from contacting the counselor within the time limits, or for other reasons considered sufficient by the agency or the Commission.

---

Kingsolver "initially contacted the EEO Staff on November 13." (Doc 23-1 at 20). If the date is a material fact, it appears that summary judgment is not warranted.

[10] The trial court's order is not clear: it appears to apply the 45-day limit for consulting an EEO counselor to a nonexistent deadline for filing a DOJ Form 100A and conclude that Kingsolver's submission of the form on October 1 rendered her claim untimely. *See* Doc. 33 at 12-17; Kingsolver Br. at 29-32.

29 C.F.R. § 1614.105(a)(2) (emphasis added).[11] The facts of this case show that Kingsolver was entitled to, and probably was given, the mandated extension of the 45 days.

1. Kingsolver was not notified of the time limits.

It is undisputed that neither Brandon nor Reed informed Kingsolver of *any* procedural requirements for her accommodations request and that there was no "exhaustion rule".[12] Kingsolver was not told that she had a 45-day window to contest the denial and had no idea that her supervisors had lied to her about her eligibility for LWOP. Indeed, given the bogus application of the "rule", Kingsolver could not have known that she was the victim of discrimination when these denials took place. Thus, she meets two requirements for extension: she was not notified of the 45-day deadline and did not know that the discriminatory personnel action (denial of LWOP based on a misrepresentation) occurred.

[11] The Government maintains that because Kingsolver did not cite 29 C.F.R. ¶ 1614.105(a)(2) to the district court in its opposition to summary judgment, the Court should not consider it now, citing *Access Now, Inc. v. Southwest Airlines Co.,* 385 F.3d 1324, 1331 (11th Cir. 2004). In that case, the court rejected the plaintiff's effort to add, at the appellate stage, a completely new basis of liability that would require additional evidence. Here, Kingsolver is not making a new argument; she is simply calling the Court's attention to an existing regulation that is binding on the Agency.

[12] Brandon testified that he didn't recall telling Kingsolver about the exhaustion rule, "but to be totally honest, I mean I know that's been my position, throughout my supervisory management executive career…I've been consistent with that." Doc. 21-5 at 333:3-16. He acknowledged that he had never applied the exhaustion rule to a disabled person requesting accommodation. *Id.* at 334:1-11.

2. <u>The Agency's EEO training did not adequately notify Kingsolver of the 45-day requirement.</u>

The Government argues that, despite her supervisors' failure to advise her, the Agency EEO training put Kingsolver on notice that she must consult an EEO counselor within the required 45 days. The only training slide on this matter reads as follows:

> If you feel that you have been a victim of discrimination or retaliation, you *may* wish to contact an EEO … officer or counselor from your agency within 45 days of the *retaliation*.

Doc. 21-1 at 43 (emphasis added). The language of the slide, particularly the word "may", would not lead any reader to understand that she was *required* to contact an EEO counselor within 45 day or lose her claim forever. Other training slides demonstrate that the training used different words in other contexts, *e.g.*, "if you feel that you were the most suitable candidate for a promotion, but you think you were passed over because you are a woman, you *should* consider contacting an EEO counselor" (Doc. 21-1 at 47); "You *should* also consider seeking the advice of an EEO counselor if you feel that you have been retaliated against for blowing the whistle on an unlawful discriminatory activity in your agency" (*Id.*); the agency "*should* … educate all employees about federal laws, rights, regulations, and requirements…" (Doc. 21-1 at 51) (emphasis added). Had the Agency used the word "should" as opposed to the word "may" in slide 47, the Government could more convincingly argue that the Agency training notified Kingsolver of the 45-day

requirement and "educate[d] all employees about federal … regulations and requirements."

Indeed, the provision by its own terms does not place the 45-day deadline on claims of discrimination, only retaliation. Although Kingsolver does not raise retaliation in this action, her original complaint to the EEO was retaliation regarding her 2007 performance rating which, for the first time in her federal career, was less than outstanding. She was advised of this rating sometime on October 30. (Doc. 23-1 at 90). Her contact with the EEO counselor was on November 11 (or 13 or 16), clearly within 45 days of the alleged retaliation. *See* Doc. 23-1 at 6.

The Government nonetheless maintains that "notification is all that is required by the regulations; understanding is not." (Govt. Br. at 35). The slide is, at best, an insufficient notification of a mandatory 45-day deadline for discrimination claims. Had her supervisors followed up with an explanation of procedures as required by the DOJ Manual and/or given her a copy of the Manual, the matter would have been clarified and she would (or should) have known that (1) she was entitled to LWOP (regardless of any exhaustion rule) from the time she first requested it and (2) having been denied same, she should go to the EEOC counselor immediately. Instead, Kingsolver stayed on the job as her health deteriorated and finally took a demotion because she was repeatedly and unlawfully denied LWOP.

Moreover, there is nothing in the record to suggest that the issue of timeliness was ever raised by either the Agency or the Commission during the 16-year process of review of Kingsolver's complaint; the Government raised it for the first time in its motion for summary judgment.[13] It would be entirely unjust for Kingsolver to have spent the time and money for this 16-year review only to have her claim rejected by the court based on a deadline she allegedly missed by a few weeks *before the review was instituted.* Kingsolver respectfully suggests that, based on the regulation's mandate, the Agency and/or the Commission effectively extended the deadline. Kingsolver respectfully requests that this Court find that her alleged failure to meet the 45-day time limit does not bar her claims.

3. The 45-day limit is subject to equitable tolling.

In her initial brief, Kingsolver directed the Court to its decision in *Wilson v. Sec'y of Veterans Affairs*, No. 20-10799, 2022 U.S. App. LEXIS 15303 (11th Cir.

---

[13] The Government cites *Oaxaca v. Roscoe,* 641 F.2d 386, 389-90 (5th Cir. 1981) in which the appellate court "reject[ed] Oaxaca's contention that the federal agency, by merely accepting and investigating a tardy complaint, automatically waives its objection to the complainant's failure to comply with the prescribed time delays." The court's other language, as well as its reversal of a summary judgment for the government, is however supportive of Kingsolver's position that the 45-day limit does not bar her claims. The court noted a similar mandatory extension in the regulation at issue there, found that there was a possibility of equitable tolling, observed the promptness of the federal employee in seeking administrative review, and concluded that the summary judgment based on the employee's alleged failure to meet the 45-day limit should be reversed. Kingsolver respectfully asks that this Court do the same.

June 23, 2022), a case with remarkably similar facts: VA employee Wilson, a disabled veteran with mobility issues, repeatedly asked to be able to park in a handicapped parking place in the VA garage rather than the employee lot a mile away. The VA continually denied her requests, gave her parking tickets every time she parked there, gave her counseling memos for same, and avoided her initiation of the reasonable accommodation procedure.[14] After four months of this treatment, Wilson filed an EEO complaint of disability discrimination; within a few hours, her supervisor asked for medical documentation and reiterated that "parking is not a condition of employment, nor related to the essential functions of your job." *Wilson* at *3. After a similar statement from an EEO counselor, Wilson did not supply the medical documentation but remained at work, continued to park in onsite handicapped parking places, continued to receive parking tickets and counseling memos, and was ultimately fired a few months later. The trial court granted the VA summary judgment, among other things, on the ground that Wilson's earlier requests for accommodation were insufficient. This Court reversed the summary judgment, concluding that "[a] jury could reasonably find that the VA's four-month-long

[14] Similarly to Kingsolver's situation, the VA took the position that "parking privileges" were not related to the core function of her job. *Id.* at *7-*8.

inaction in addressing Wilson's request constitutes a failure to accommodate…" *Id.* at *6. [15]

The Government argues that *Wilson* is distinguishable because there were genuine factual disputes about whether the VA had discriminated against Wilson, and *Wilson* involved no issue – nor any discussion – regarding the administrative filing deadline. (Govt. Br. at 36). This "distinction" is baseless. Whether or not it was discussed, the facts of the case clearly involve an issue of the administrative filing deadline: Wilson's earlier requests were made on March 31, April 13, and April 21, and she filed her EEO complaint on July 22. The Government's analysis would place these earlier claims outside the 45-day deadline, and therefore time-barred. This Court essentially debunked the Government's argument by its conclusion that a jury should consider whether the VA's "four-month-long inaction" constituted a failure to accommodate. *Id.* Put another way, the earlier requests, even though outside the 45-day limitation, were an essential component of Wilson's Rehab Act complaint.

Such is the case here: Reed and Brandon admitted their ignorance and disregard of the Agency's accommodation procedure, did not consider Kingsolver's requests in good faith, lied to her about the availability of LWOP, and increased her

[15] This Court concluded that Wilson's failure to provide the medical documentation of her disability did not subject it to dismissal because it was the VA that was responsible for the breakdown in the accommodations process. *Id.*

responsibilities immediately after she submitted the DOJ Form 100A, something that would have exacerbated both her cardiac arrythmia and depression. *See* Kingsolver Br. at 27-29. All these actions, particularly the lies about LWOP, should be considered by a jury in its determination of Kingsolver's claim.

The Government nonetheless argues that this case is not subject to equitable tolling. The only cases in this Circuit which have denied equitable tolling of the 45-day limit are where the employer (1) had granted some accommodation and (2) had argued throughout the administrative proceedings that the employee had not met the 45-day deadline. *See Mullin v. Sec'y, Dept of Veterans Affs.,* 2022 WL 2159721 (M.D. Fla. June 15, 2022); *Tarmas v. Mabus,* 2010 WL 3746636 (M.D. Fla. Sept. 21, 2010), *aff'd Tarmas v. Sec'y, U.S. Navy,* 433 F. App'x 754 (11th Cir. 2011) (per curiam). Here, the Agency misrepresented that LWOP was not available as an accommodation and never raised a timeliness argument in the *sixteen years* of administrative proceedings. Equity demands that her claim be heard now and this Court's most recent discussion of the issue in *Wilson* should carry the day. Kingsolver respectfully requests that the summary judgment be reversed and that she be allowed to present the Agency's five-month inaction in considering her requests for LWOP and her demotion to the jury.

## II. Kingsolver's repeated requests for LWOP were reasonable, her demotion was involuntary, and the Agency's refusal to grant her reasonable accommodation was a violation of the Rehab Act.

Throughout her dealings with Reed and Brandon, Kingsolver requested two things: a lateral transfer and LWOP. The opportunity for a lateral transfer never materialized and the Government continues to maintain that the denial of LWOP was not discriminatory. The Government's argument is internally contradictory, draws on inapposite caselaw, and should be rejected by this Court.

A. LWOP is a reasonable accommodation.

The Government appears to concede this point, even acknowledging that Agency training designated that "paid or unpaid leave is a form of reasonable accommodation."[16] Indeed, the DOJ manual suggests "extended leave" as a possible accommodation for "major depression or panic attack disorders." (Doc. 23-1 at 107). At the administrative level, the Agency's position was that Kingsolver never requested LWOP: Reed and Brandon variously claimed Kingsolver made no such requests and/or that they could not recall whether she had. (Doc. 21-5 at 229:5-15); 303:19-304:5; 332:24-333:17). The Government's new untenable argument is that Kingsolver's request for LWOP was unreasonable:

> … Kingsolver's request for leave without pay was not reasonable. She asserts that her "wish was to go on leave without pay, get myself together, and come back to work." … But a request

[16] Although this particular slide was not included in the Government's proffer of training materials, the. Government cites to Kingsolver's 2012 testimony that her training materials included a slide that stated, "[P]ermitting the use of paid or unpaid leave is also a form of reasonable accommodation." (Doc. 21-7 at 90:2-3.)

> for leave so an employee can return to work at "some uncertain point in the future" is not a reasonable accommodation. *Wood v. Green,* 323 F.3d 1309, 1314 (11th Cir. 2003).

(Govt. Br. at 41). There is no suggestion in the any of the Agency's reasonable accommodation materials of a time limit for unpaid leave requests. Moreover, it is clear from the caselaw that Kingsolver's request would not constitute "indefinite leave" that is unreasonable and thus properly deniable.

Kingsolver argued in her initial brief that a first-time request for LWOP as an accommodation has never been deemed unreasonable. *See, e.g. Wood v. Green,* 323 F.3d 1309, 1314 (11th Cir. 2003) (employee had missed several weeks of work each year for fourteen years); *Duckett v. Dunlap Tire Corp.,* 120 F.3d 1222 (11th Cir. 1997) (employee had been out of work for ten months); *Billups v. Emerald Coast Utilities Auth.,* 714 F. App'x 929 (11th Cir. 2017) (employee had been out of work for six months); *Tolber v. James,* No. 2:13-CV-427-WKW, 2015 WL 2169950 (N.D. Ala. May 8, 2015) (employee was out six months on medical leave and not in touch with employer as required). In its response, the Government does not challenge this position but argues instead that the Agency did not fail to accommodate Kingsolver "because it had always approved her leave when she had experienced stress." (Govt. Br. at 41), *citing Porterfield v. SSA,* No. 20-10538, 2021 U.S. App. LEXIS 26129, at *18 (11th Cir. 2021). Like the cases cited *supra, Porterfield* does not support the Government's contention that a first-time request is unreasonable:

> Mrs. Porterfield had … accrued hundreds of hours of annual leave, sick leave, advanced annual leave, advanced sick leave, and LWOP. The record indicates that she took leave for various different reasons—vacation leave, leave related to her workers' compensation, FMLA leave for her daughter's asthma, and leave related to her migraines.

*Porterfield v. Soc. Sec. Admin.*, No. 20-10538, 2021 WL 3856035, at *5 (11th Cir. Aug. 30, 2021).[17] In contrast, Kingsolver took one full (October 4: Doc. 21-5 at 16(61):16-18) and two half (October 3:Doc. 21-5 at 57:13-58:5; July 13: Doc. 23-1 at 52) days of sick leave related to her disability; one day for an appointment with her eye doctor (Doc. 21-5 at 61:20); and a two-week vacation in April-May. (Doc. 23-5 at 12:12-18). The Government produced no evidence that Kingsolver had ever abused the Agency's leave policies; indeed, the Government notes that Kingsolver "alleged that she had accrued 240-plus hours of annual leave – meaning that the Agency was willing to approve at least 30 days of leave to accommodate her." (Govt Br. at 42).

This last point underscores the logical absurdity of the Government's argument: if the Agency was willing to approve at least 30 days of *paid* leave, why is Kingsolver's request for *unpaid* leave unreasonable? The Government's bizarre

[17] The Government's description of the case is somewhat misleading. It cites to this Court's decision, notes that the district court had granted summary judgment "because the plaintiff had asked for indefinite leave", and fails to acknowledge that, on appeal, this Court specifically stated that it was not addressing the district court's finding that Porterfield's request was akin to one for indefinite leave. *See Porterfield* at *8; Govt. Br. at 41-42.

answer to this question is that the Rehab Act "does not impose liability on an employer for its failure to provide 'all the accommodations [the employee] feels are appropriate.'" Govt. Br. at 42-43, *citing Doe v. Dekalb Cty. Sch. Dist.,* 145 F.3d 1441, 1451 (11th Cir. 1998).[18] That answer does not explain why the Court should find Kingsolver's request for LWOP unreasonable. If Kingsolver had taken the 30 days annual leave "the Agency was willing to give her," was not ready to come back after the six weeks and then asked for LWOP (for which she then would have been eligible, according to Reed and Brandon), the Government might have an argument that she was then making an unreasonable request for indefinite leave. The Government's untenable characterization of a first-time request for LWOP "to get [her]self together and come back to work" as unreasonable cannot be supported. Kingsolver requested it as a reasonable accommodation; all the Agency materials state that it qualifies as such; and rather than lying to her about it, Reed and/or Brandon should have granted her request.

B. The Agency's unlawful denial of Kingsolver's requests for LWOP, its lies concerning LWOP availability, its lack of good faith in addressing Kingsolver's concerns, and its assignment of heavier duties to Kingsolver after she requested a reduction of workplace stress resulted in Kingsolver's involuntary and discriminatory demotion.

[18] The Government's citation to this case is misleading. Although the quoted language can be found in the case, it is not germane to the Court's discussion, which dealt not with reasonable accommodation but whether a lateral transfer to another classroom was an adverse action against a teacher with HIV. *See* 148 F.3d at 1448-1454.

The Government agrees that the Agency "unlawfully discriminates against a qualified individual with a disability when the employer fails to provide 'reasonable accommodations for the disability – unless doing so would impose undue hardship on the employer" (*Lucas v. W. W. Grainger, Inc.,* 257 F.3d 1249, 1255 (11th Cir. 2021)) and that Kingsolver can recover when the Agency fails to provide the accommodation after it was requested. *Gaston v. Bellingrath Gardens & Home, Inc.,* 167 F.3d 1361, 1363-64 (11th Cir. 1999). *See* Govt. Br. at 38-39.

The record demonstrates that Kingsolver was disabled by virtue of her chronic depression and cardiac arrythmia brought on by workplace stress, and that the Agency discriminated against Kingsolver when it denied her reasonable request for LWOP over a five-month period while lying to her about its availability, failed to explain and to follow the Agency's reasonable accommodation procedure, increased Kingsolver's job responsibilities after she filed DOJ Form 100A and requested that her workplace stress needed to be relieved as soon as possible, and gave her no alternative but to take a demotion.

The Government takes issue with all of these contentions, but its position is not supported by the record or the law. As discussed *supra,* Kingsolver's request for LWOP was reasonable.[19] Reed and Brandon lied to her: they said she could not take

---

[19] The Government discusses at some length that Kingsolver's requests for lateral transfer and general help were not reasonable. (Govt. Br. at 40-43). While these arguments are not germane to this appeal, Kingsolver disagrees with the

LWOP until she exhausted her accrued paid leave. Five months after Kingsolver made her first requests for LWOP and lateral transfer, she submitted her DOJ Form 100A on October 1 with the notation that she needed to have her work stress reduced as soon as possible. Brandon and Reed responded by increasing her work responsibilities with GS-12 tasks. When Kingsolver fell apart over the new job responsibilities, Reed again offered her the GS-7 position and told her LWOP was not available. Kingsolver's physician told her that she had to get away from the job or she would have a heart attack. The Agency then threatened that the GS-7 position might disappear and if so, Kingsolver would have to remain in her job; it gave her less than 24 hours to choose. Kingsolver felt that her only healthy option was to leave her job and she modified the Form 100A to say she would take a demotion.

The Government argues that Kingsolver requested the demotion and thus it could not have been discriminatory. To the contrary, a review of the Agency's conduct shows that the transfer was not voluntary. In *Hargray v. City of Hallendale,* 57 F.3d 1560 (11th Cir. 1995), this Court held that an employment action, like

---

Government's contentions that the Agency offered extended leave and flexibility in her work schedules, and the Agency helped Kingsolver by informing her of the Employee Assistance Plan, met with her several times and "listened to her about her cardiac arrythmia, depression and stress", moved her to an office with a window and "even formally initiated the accommodation process by providing her with DOJ's reasonable accommodation form." (*Id.* at 43). None of these gestures were accommodations for Kingsolver's disability; with the exception of the window, they are the terms and conditions of every Agency employee.

Kingsolver's demotion, is presumed voluntary "unless the employer forces the … demotion by 'coercion or duress', or the employer obtains the … demotion 'by deceiving or misrepresenting a material fact to the employee." *Hargray,* 57 F.3d at 1568. The district court found that Kingsolver met three of the five factors for duress (less than 24 hours to choose between demotion and the job that was making her sick, no opportunity to determine the date of demotion and no advice of counsel) (Doc. 33 at 20-21). Moreover, the "demotion request" resulted in part from the imposition of additional duties which would make Kingsolver's stress, and thus her conditions, worse. Kingsolver was forced to choose between her GS-9 position and her health. This choice was required against the backdrop of Reed's and Brandon's five months of inaction regarding her requests for accommodation and their repeated lie that she was not eligible for LWOP.

The Government nonetheless insists that Kingsolver's demotion was voluntary. First, the Government argues that Kingsolver waived this argument because she did not raise it in response to the Government's motion for summary judgment: but the district court discussed and applied *Hargray* in its order granting summary judgment, from which this appeal is taken. (Doc. 33 at 18-21). The court was certainly "afforded … an opportunity to recognize and rule on it." *In re Pan Am. World Airways, Inc.,* 905 F.2d 1457, 1462 (11th Cir. 1990). The Government's absurd argument that Kingsolver waived this argument should be rejected by this

Court. Second, the Government argues that Kingsolver's argument is not supported by specific facts but does not identify which contentions lack factual support. Because Kingsolver has given citations to the record for the facts supporting this contention, the Government's vague argument should be rejected. Third, the Government maintains that *Hargray* is inapplicable because it was a due process case, completely ignoring the fact that the district court extensively discussed and applied the case in its order in the Government's favor.

The Government contends "the applicable case" is not *Hargray,* but *Doe v. Dekalb Cty. Sch. Dist.,* 145 F.3d 1441, 1451 (11th Cir. 1998). *See supra* at 17-18, n. 14. Concerned about HIV contagion, the school district employer transferred Doe, a HIV-infected teacher, from a classroom of sometimes violent children to one where there would be less likelihood of injury and thus blood to blood transfer of the virus. *Id.* at 1443-1444. Doe complained because he wished to remain with that cohort of students and would have to complete ten credit hours to obtain new certification; it is undisputed that he suffered no loss of pay or benefits. *Id.* at 1444 The employer argued that this lateral transfer was not an adverse employment action that would satisfy a *prima facie* case. *Id.* at 1445.

This Court noted that "where a plaintiff has allegedly suffered … demotion …, a court normally has no cause to consider its standard for adversity; the relevant question in such cases is whether such patently adverse actions actually took place."

*Id* at 1448. The Court went on to adopt an objective standard for adversity, *i.e.,* "an ADA plaintiff must demonstrate that a reasonable person in his position would view the employment action in question as adverse." *Id.* at 1449.

Despite the court's conclusion that a demotion is an adverse action, the Government maintains that Kingsolver "must demonstrate that a reasonable person in [her] position would have found [her] transfer to be adverse under all the facts and circumstances." (Govt. Br. at 48, *quoting Doe* at 1453). All the facts and circumstances of this case – *i.e.,* Kingsolver was repeatedly lied to about the availability of LWOP, continued to work in an unhealthy environment while hoping for a lateral position to come available, requested relief after the imposition of additional duties, and agreed to demotion and resulting loss of salary and benefits just to get away from the stress - a reasonable juror could easily conclude that the demotion was an adverse employment action.

Whether the Court considers *Hargray* or *Doe* as applicable precedent, the Government is not entitled to summary judgment. *Hargray* would render her demotion involuntary because of the duress described *supra* and the repeated misrepresentations that Kingsolver could not take LWOP. Kingsolver requested, and certainly would have accepted, *Doe*'s transfer – to a less stressful office with the same pay and benefits.

The Government also argues that the demotion was not discriminatory because it was actually a grant of her last request for reasonable accommodation. That contention is not supported by the record. Although the specific document is not in the record, DOJ Form 100B, the form that responds to the Form 100A requesting the accommodation, stated that Kingsolver's request was untimely because she waited two months before submitting it. (Doc. 40 at 11-14). It appears that the district court understood this to be true, because she repeatedly referred to Kingsolver's having failed to file the Form 100A on time, despite there being evidence of a deadline for filing the form. (Doc. 33 at 15-17; *see* Kingsolver Br. at 29-31). If the Agency had granted the accommodation, it was its burden to put some evidence in the record supporting that position. The only evidence of Kingsolver's demotion is the "Notification of Personnel Action" with the notation "Action at employee's request." (Doc. 23-1 at 89). The Government can't have it both ways – rejecting Kingsolver's request for accommodation as untimely and then arguing that the request was granted.

The Code of Federal Regulations unequivocally mandates that "[t]he Federal Government shall be a model employer of individuals with disabilities." 29 C.F.R. ¶ 1614.203(c). In Kingsolver's case, ATF was anything but. In response to her medical documentation of her depression and cardiac arrythmia, the Agency questioned her motives for the requests, repeatedly lied to her about the availability

LWOP, failed to acknowledge and follow its own reasonable accommodation procedure, provided an office with a window as its only accommodation, increased her duties so that her conditions would worsen and, after she accepted a demotion under duress, took away her windowed office and gave her the lowest performance rating of her career. After a sixteen-year review of her discrimination claims, the Government argued, for the first time, that Kingsolver's claims should be dismissed because she missed an unknown deadline by a few weeks, that her requests for LWOP were unreasonable because she didn't specify a length for the leave, that her demotion was not discriminatory because she had requested it, and generally that she should have shouldered the responsibility to figure out the reasonable accommodation procedure, to determine her remedies and to know that her supervisors were lying to her and immediately complain. Kingsolver's hard work, patience and forbearance have been rewarded by a denial of her requests, her character, and her right to have a jury hear her story. Kingsolver respectfully requests that this Court remedy the Government's illegal actions by providing her a trial.

## CONCLUSION

For the reasons stated herein, Kingsolver respectfully requests that this Court reverse the district court's order granting summary judgment.

This 16th day of October, 2025.

Respectfully submitted,

/s Mary Helen Moses
Mary Helen Moses
Mary Helen Moses, Esq., LLC
235 Olive Way
St. Simons Island, Georgia 31522
(912) 269-0907
maryhelenmoses@gmail.com

/s/ Andrew M. Ruberti
Andrew M. Ruberti
Georgia Bar No. 463231
Ruberti Law Offices, LLC
104 Cater Street
St. Simons Island, GA 31522
Telephone: (912) 266-1814
amr@rubertilaw.com

## CERTIFICATE OF COMPLIANCE AND SERVICE

This document complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding parts of the document exempted by Fed. R. App. P. 32(a)(7)(B)(i), this document contains 6488 words.

I hereby certify that I have electronically filed the foregoing Reply Brief of Plaintiff-Appellant via the CM/ECF system which will automatically send a service copy to the following counsel of record:

Channell Singh

channell.singh@usdoj.gov